Bradley, Appellant, *v.* Pioneer Oil Co. et al.

Argued April 10, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*F. Harold Gates,* for appellant.

*Francis A. Wolf,* and with him *Meyer and Nunnink* and *Harold T. Parker,* for appellees.

OPINION BY JAMES, J., July 14, 1933:

Earl Bradley, claimant, was employed by the Pioneer Oil Company, defendant, and on October 31, 1929, while in the course of his employment was injured by a gas explosion at a drilling well. He was burned about the face, mouth, lips, ear and nose and inhaled gas fumes and flames, his greatest injury being to the mouth and throat. Claimant was unable to work following the explosion and injury for a period of about three weeks and then returned to his employment. On December 12, 1929, after he had gone back to work, he received his final payment and executed a final receipt for compensation. He continued to work until June 1930, during which month and until August 15, 1930 he only worked part time. On August 15, 1930 he quit work when he became totally disabled and. was unable to work. On March 20, 1931, claimant filed his petition for modification which, upon agreement of the parties, was treated by the referee as a petition for review, and which set forth that said employee was disabled, suffering from lung trouble, probably tuberculosis. Defendant filed an answer denying that disability was due to the accident and averring that the statute had run against the petitioner. Hearings were held, and the referee filed his order on July 1, 1931 reinstating compensation as of August 15, 1930. From this order, the defendant appealed to the Workmen's Compensation Board, which board filed its order and opinion sustaining the finding of the referee but modified his finding of fact by adding thereto that "claimant was disabled at the time of the execution of the final receipt." From the decision of the board, an appeal was taken to the court of common pleas where the ex-

ceptions were sustained and judgment entered for the defendant.

Under appellant's single assignment of error, it is urged, (1) that the court below had no jurisdiction to reverse the finding of fact of the referee and Workmen's Compensation Board, and (2) that compensation is correctly allowed although one year had elapsed since the last payment of compensation before the petition to review was filed.

1. Section 427 of the Act of June 26, 1919, P. L. 642, 77 PS Sec. 872, which takes the place of Section 425 in the original statute, states that "Any party may appeal from any action of the board on matters of law to the court of common pleas......and (appellant) shall file with his notice of appeal such exceptions to the action of the board as he may desire to take, and shall specify the findings of fact, if any, of the board or of the referee sustained by the board, which he alleges to be unsupported by competent evidence"; this is the section which permits facts to be attacked on such an appeal. .

The act means that on appeal, the courts may examine the proofs to see whether legally competent evidence is present to support the findings on which the award rests; it does not mean that the evidence may be weighed as to its probative force in fact, and the findings changed by the court to its own belief in that respect: Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 133 A. 256. It was the duty of the court below to examine the record and determine whether it contained such testimony as would justify the granting of the award, and it now becomes the duty of this court to determine whether the action of the court below was in error in holding that the record did not justify the granting of the award.

2. There is no doubt that claimant was seriously injured and is totally disabled and our determination must hinge upon whether there was such a mis-

take of fact at the date of settlement as to warrant a review and reinstatement of the claim. Prior to the Act of April 13, 1927, P. L. 186, in which Section 413 is amended, this petition could and would have been properly entertained without question, but the Act of April 13, 1927, Section 413, was amended with this provision: "Except in the case of any eye injuries, no agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the board within one year after the date of the last payment of compensation, with or without an agreement." The petition in the present case not having been filed until more than fifteen months after the last payment of compensation, the claim would be barred by the provision in Section 413, supra, unless it is saved by the first paragraph of Section 413, Act of April 13, 1927, or Section 434, Act of June 26, 1919, P. L. 642 (669); "That the board or referee designated by the board may at any time set aside a final receipt upon petition filed with the board if it be proved that such receipt was procured by fraud, coercion, or other improper conduct of a party or is founded upon a mistake of law or of fact."

In Zupicick v. P. & R. C. & I. Co., 108 Pa. Superior Ct. 165, 164 A. 731, this court in an opinion by KELLER, J., reviewed all the applicable authorities and held that the first paragraph of Section 413 relates only to the "review, and modification or setting aside of existing compensation agreements on the ground of fraud, coercion, or other improper conduct of a party, or when the agreement was founded on a mistake of law or fact"; that the mistake of law or fact contemplated by this paragraph relates to a fact or condition existing at the time the agreement sought to be reviewed was made, and that the second paragraph of Section 413 relates to the modification or reinstatement of original or supplemental agreements, or awards, provided, no agreement or award shall be

reviewed or modified or reinstated unless a petition is filed with the board within one year after the date of the last payment of compensation, with or without an agreement." (See also Bucher v. Kapp Bros. et al.; Busi v. A. & S. Wilson Co. et al., opinions filed this day.)

The present application could not be considered under the first paragraph of Section 413 because there is not an existing agreement and whether we are to be governed by Section 413 with its proviso or by Section 434 which relates to final receipts must depend entirely upon the testimony.

Claimant's petition does not allege that any mistake of law or fact was made at the time the payment was made and the final receipt under the compensation agreement given. What is set out in and as grounds for the petition is that the disability of Earl Bradley has increased as follows: "Said employee is now disabled, suffering from lung trouble, probably tuberculosis. Accident occurred October 31, 1929. Employee returned to work November 15, 1929 but was compelled to quit work again on August 15, 1930." In construing claim petitions of this character the trend of the decisions has been an endeavor to administer the law in accordance with its intent and spirit and it has been stated repeatedly that when a petition states a legal ground for relief, we shall consider it as filed under the section authorizing the granting of the relief sought for, regardless of the form of petition, if the testimony establishes facts which bring the claimant within the compensation laws.

The pertinent testimony of claimant bearing on his condition is as follows: "Q. In what respects are you disabled now? A. Lung trouble. Q. When did you first develop this trouble, if you know? A. Well, it started as soon as it began to get warm weather. Q. What year? A. 1930. Q. Warm weather of 1930? A. Yes, sir, spring of 1930." (page 5).

Five physicians were called by plaintiff. Dr. F. M. Summerville testified as follows: (page 16) "Q. Assuming, doctor, that he is a victim of asthma, would you be able to connect that condition with his swallowing the flame and inhaling gas fumes and flames? A. I would say if there was no history of any asthma before the accident, that the inhalation of flames or gas fumes would be a very likely cause for an asthmatic condition, due to the irritation that it caused the bronchi at the time of the accident. Granting this being so, the symptoms would not probably come on until there was scar tissue formed in the bronchi." Dr. Summerville further testified that "From history of the case the condition that he was in at the time he was burned and the inconvenience that he has in his throat, I would unquestionably say that the asthmatic condition is the result of the inhalation of the flames and gas." (page 18) "Q. He did not have that asthmatic condition when you discharged him, did he doctor? A. No, it would be impossible for an asthmatic condition to develop this quick after accident. Q. About how long would you say it would take for this asthmatic condition to develop? A. Depending on how long it takes the scar tissue to form in the bronchi, anywheres from six to eight or ten months, something of that kind. Dr. John C. Wilkins, who examined the claimant in April, 1931, testified: (page 20) "Q. And the condition you found him in, doctor, would you say it is your professional opinion that it is due to that injury?" (page 21) "A. I would say a chronic asthma of that type could be caused from an injury of that type. From my experience with soldiers in the war, asthma following gassing are common types ...... I would say at his age, along forty, an injury, the inhalation of low gas and burning gas, could cause a chronic degeneration of the bronchi and air cells and produce a disease of this type." Dr. Dickey testified that he agreed with Dr.

Sheridan that claimant was not tubercular. (page 6)
"Q. Will you relate to the court just the facts in
regard to this case? A. ......Then he was returned to
the Oil City Hospital when Doctor Strayer took care
of him and the doctor agreed with Doctor Sheridan
that he was not tubercular, and I am of the same
opinion, but it is an asthmatic condition which dis-
ables him completely, and in my opinion, is due to
the injury sustained when he evidently inhaled some
flame at the time of the accident in 1929." Dr. J.
P. Strayer testified: (page 11) "Q. From the examina-
tion and from your observation of the case will you
state whether or not you consider the disability is
permanent, or whether in time it will improve and
there will be a recovery? A. As Doctor Dickey says,
it is a hard question to answer, really. I looked upon
his condition, when I examined him in the dispensary
and when I took care of him in the hospital, that it
was not a straight asthma, but it was of a traumatic
nature. I think I expressed to Mr. Bradley at the
time I went over him carefully that I was afraid
that his condition, the condition of the bronchial tubes,
and that is where asthma is, that there was perhaps
a certain amount of injury to those tubes, and I felt
the same way when I took care of him in the hospital."
Dr. Phillip Sheridan testified: (page 13) "Q. What
would you say as to the nature of the injury as to
whether it would be permanent or otherwise? A. Well,
he has rather a typical asthma. It was not an ordi-
nary case, and in my opinion he will never be entirely
well of it, although the thing may show periods of
improvement. Q. Doctor, I wish to ask you, in your
opinion, whether it would be possible for Mr. Bradley
to do any work? A. When I saw him, certainly not."

In the opinion of the compensation board, they say,
"The claimant's injury was a peculiar one, the ex-
tent of which could not have developed until the growth
of scar tissue. It is unnecessary to describe the acci-

dent, except to say that his throat and mouth were severely burned by the inhalation of fire and gaseous fumes, and that he might very well have thought himself restored to health until scar tissue developed, totally disabling him." From an examination of claimant's testimony, the medical testimony and from the finding of the board itself, we can find no such mistake of fact or law as is contemplated by Section 434, but that his present disability is a change or development growing out of the injury or a chronic degeneration resulting from it. We are, therefore, compelled to construe the claimant's petition under the second paragraph of Section 413, which provides for the review or reinstatement of terminated compensation agreements and under which section a failure to file a petition for review within one year after the last payment of compensation will bar an award of compensation.

There is no doubt that the claimant has suffered serious injury resulting from the accident which occurred on October 31, 1929 but he had from the middle of August, 1930, when he quit work until December 12, 1930 within which to file his petition. As was stated by Judge KELLER in Zavatskie v. P. & R. C. & I. Co., 103 Pa. Superior Ct. 598, 601, 159 A. 79, "The legislature, for the reasonable protection of the employer, has fixed a period beyond which agreements can not be reviewed except for the matters reserved in the first paragraph of Section 413, and they relate to a fact or condition existing at the time the agreement sought to be reopened was made, and not to subsequent changes, developments or increase of disability arising out of that condition." The within case is ruled by DeJoseph v. Standard Steel Car Co., 99 Pa. Superior Ct. 497, and Zavatskie v. P. & R. C. & I. Co., supra.

Judgment affirmed.