Pelusi *v.* Mandes et al., Appellants.

Argued April 24, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George F. Blewett,* and with him *Robert P. F. Maxwell,* for appellants, cited: O'Neill v. Lehigh Coal and Navigation Company, 108 Pa. Superior Ct. 425; Diriscavage v. Pennsylvania Coal Company, 96 Pa. Superior Ct. 189.

*James J. Regan, Jr.,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1933:

This appeal is by Joseph Mandes and Sons, contracting masons, and their insurance carrier, from a judgment entered by the court below upon an award of compensation to the dependent widow and daughter of an employe, Louis Pelusi, for his sudden death on November 14, 1929.

Admittedly, Pelusi's death occurred while he was in the course of his employment, but the pivotal question, under the assignments, is whether it was caused by "an accident," within the meaning of Section 301 of Article III of our Workmen's Compensation Law of June 2, 1915, P. L. 736, or was the natural result of a progressive and incurable disease with which he was afflicted.

These material and uncontroverted facts were developed by the testimony:

Claimant's husband, about forty-five years of age, was employed by appellants as a laborer and had been

doing the work in which he was engaged when stricken (delivering wet cement from a wheelbarrow to masons) "off and on" for a period of about four years.

In the language of Dr. Blakeslee, called by claimant, Pelusi was "handicapped" by a "chronic, degenerative disease of the circulatory system and of the kidneys, with a specialized diseased process involving the arch of the aorta ...... a lesion known as an aneurysm." This witness also said the presence of the aneurysm placed the employe's life "in jeopardy, whether he was moving or whether he was quiet, and any effort, even though it may be slight, would be sufficient to rupture this aneurysm" with fatal results.

Another medical expert likened the condition of Pelusi's aorta to that of "a rubber tube about to give way."

The coroner's physician, who performed the post mortem, said: "He shouldn't have been on the job; if he would have been in bed, he would have been better off; sick man"; and explained that his continual exertion from day to day had gradually enlarged the artery.

At the time of Pelusi's death appellants were constructing the Clothier Memorial at Swarthmore College. He had been engaged for several days in delivering wet cement to the masons. It was mixed on the ground, run into a wheelbarrow, having a wooden frame and iron pan, and the loaded barrow, weighing from 150 to 200 pounds, was placed upon an elevator and hoisted to a scaffold about twelve feet above the ground. When the cement arrived at the scaffold, it became the duty of Pelusi to remove the barrow from the elevator and wheel it along the level scaffold, six feet in width and constructed of heavy planks, delivering the cement to the masons as needed by them.

On the morning of November 14, 1929, Pelusi reported for work at seven o'clock and worked at his

usual task for more than an hour. Shortly after eight, he wheeled his barrow a distance of about seven feet from the elevator and stopped at the station of a mason, a fellow countryman who was about to return to Italy. He put his barrow down and engaged momentarily in conversation with this workman; suddenly the color of his face changed and he died almost instantly from a rupture of the aneurysm.

With reference to the wheelbarrow and the nature of the work, one of his employers testified: "It is a two-legged affair with one wheel; regular wheelbarrow; where the wheel is an axle; after you have it up, just lean against it; it is easy; level stretch; but, if you are going to push it up a hill, I will say it is some job."

The award was based upon this finding of fact by the board: "There is medical testimony that Pelusi's death was due to a rupture of an aneurysm of the ascending arch of the aorta, that he had for some time been afflicted with this aneurysm, and that the strain and exertion of wheeling the wheelbarrow load of cement caused the rupture; and we so find as a fact." From this, the conclusion of law was drawn that his death resulted from "an accidental injury suffered in the course of his employment."

In our opinion, the law has not been properly applied to the facts appearing from the evidence in this case.

The fatal defect in claimant's case is that although she has shown her husband's death resulted from violence to the physical structure of his body, she has not adduced any evidence that the violence was occasioned through the happening of any undesigned, unforeseen, sudden or unexpected, occurrence—any mishap, untoward or fortuitous, event.

There is no evidence of any objective happening or incident (Micale v. Light & S. W. Ins. Fund, 105 Pa.

Superior Ct. 399, 161 A. 600) outside of the usual and normal course of events to be expected in the performance of the work in which Pelusi had been engaged daily; nor is there any evidence from which the inference could be drawn that there was anything unusual about the exertion put forth by him in moving this particular load of cement.

It is clear from an examination of the testimony of the medical experts that when they spoke of "extra" or "undue" strain they meant any strain in excess of the normal blood pressure. One of them said: "He probably was straining that condition with every bodily movement he made. It has a whole chain of effects on that diseased vessel wall that brought about the end. The aneurysm wall wasn't able, and in many cases isn't able, to withstand any variations in pressure in the circulation and with an aneurysm the efforts, the physical efforts put forth by the individual, have a rather great effect upon the aneurysm and sooner or later lead to rupture."

In every compensation case, the claimant must first show the happening of some "accident"; only after that has been done, are the compensation authorities empowered to consider its alleged harmful results.

We now have an authoritative interpretation by our Supreme Court of the words, "an accident," as they are used in the statute. In Lacey v. Washburn and Williams Company, 309 Pa. 574, Mr. Justice DREW, speaking for the court, said: "The rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event."

We think this case is ruled by Gausman v. Pearson Co., 284 Pa. 348, 131 A. 247; Diriscavage v. Penna. Coal Co., 96 Pa. Superior Ct. 189; O'Neill v. Lehigh C. & Nav. Co., 108 Pa. Superior Ct. 425; Waleski v. Susquehanna Collieries Co., 108 Pa. Superior Ct. 342; and Mooney v. Yeagle et al., 107 Pa. Superior Ct. 409.

In the O'Neill case the death of the employe was caused by an attack of angina pectoris which occurred while he was engaged in the performance of his usual duties as a carpenter for a coal company, and in the Mooney case the decedent, a plumber, was stricken with a fatal heart attack while working in a trench. There, as here, it appeared from the evidence that Mooney had been suffering for more than a year from chronic myocarditis and it was contended that his death had been superinduced by the strain of his work, which was excessive for a man in his physical condition. In discussing the necessity of proving some accident, KELLER, J., reviewed the leading cases on both sides of the line and that discussion need not be repeated.

Under all the evidence in the case at bar, the strongest inference which may legitimately be drawn is that Pelusi's death would probably not have occurred on November 14, 1929, if he had not been at work that day; in other words, that it was hastened by his employment.

But that is not sufficient, for, as stated in Gausman v. Pearson Co., supra, death or disability overtaking an employe at his work is not compensable unless it is the result of accident, and death or disability hastened by the performance of the usual and ordinary duties of an employe cannot be treated as accidental; nor can death or disability overtaking an employe in the course of his employment, but resulting from a natural cause, be so treated. To hold otherwise, would be to make the employer an insurer of the life and health of the employe and would render it exceedingly difficult for a middle-aged or physically defective person to obtain employment.

On the other hand, if there is evidence of a mishap or accident to an employe, the fact that he was suffering from a chronic ailment, which rendered him more

susceptible to injury than an ordinary person would be, will not deprive him or his dependents of compensation.

The judgment now appealed from cannot be sustained, because, in the language of Lesko v. Lehigh Valley Coal Co., 270 Pa. 15, 112 A. 768, there was not shown "any sudden, unlooked for, occurrence in the course of [Pelusi's] work calling for any extra exertion or strain other than that required by his usual and ordinary labor for the day."

The cases relied upon by the board, the court below, and counsel for appellee, are distinguishable upon their facts. In Clark v. Lehigh Valley Coal Co., 264 Pa. 529, 107 A. 858, a case in which the employe's aorta was ruptured while vomiting, there was abundant evidence of an accident, through which his clothing had been set on fire; in Murphy v. P. & R. C. & I. Co., 98 Pa. Superior Ct. 108, the employe was engaged in unusual and unaccustomed work—shoveling coal over a high partition; in Zborovian v. Suffolk Anth. Col. Co., 93 Pa. Superior Ct. 320, the employe was unloading mine props, one of which became unbalanced and caused the accident; in Kotkoskie v. N. W. Mine Co., 105 Pa. Superior Ct. 480, 161 A. 480, the mine car, which the employe was pushing, unexpectedly caught against the roof by reason of overloading; Betts v. American Stores Co. et al., 105 Pa. Superior Ct. 452, 161 A. 589, is an illustration of an accident happening while the employe was performing labor in the usual manner and without over exertion, but the award was based upon the happening of the accident; and Pollock v. Clairton Schl. Dist. et al., 100 Pa. Superior Ct. 333, was a hernia case in which the contest was not whether the injury had resulted from an accident, but whether notice had been given to the employer within the specified period.

In all of these cases there was evidence from which

the compensation authorities could properly find that the employe had been the victim of some mishap, or fortuitous or unexpected happening or incident, outside of the usual course of events,—some "accident," as interpreted and defined in the above cited decision of the Supreme Court.

As the record in this case is barren of any such evidence, we must sustain the first, second, fourth and fifth assignments of error.

Judgment reversed and here entered in favor of the defendants.