Melini *v.* Saltsburg Coal Mining Company et al., Appellants.

Argued October 1, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Charles E. Harrington,* with him *Floy C. Jones,* for appellant.

*James Gregg,* with him *Charles D. Copeland, Jr.,* of *Gregg & Copeland,* and *Wm. J. McDowell, Jr.,* for appellees.

OPINION BY STADTFELD, J., November 13, 1935:

This is a workmen's compensation case in which the referee made an award in favor of claimant which was affirmed by the board, and on appeal the court entered judgment thereon. From this judgment an appeal was taken by Saltsburg Coal Mining Company, defendant. The name of Madiera, Hill and Company was inadvertently inserted in the proceedings and need not be considered on this appeal.

The board affirmed, inter alia, the following findings of fact by the referee: "Third: The claimant was employed by the defendant company as a coal miner and while so employed in the mine of the defendant at his required place of employment on November 4, 1932 he was engaged in lifting a large piece of boney when he suffered a sprain of the back. As a result of the sprain claimant was totally disabled for a period of twenty-two (22) days following which he returned to work still suffering inconvenience from the back sprain. Claimant worked at his regular employment following his return to work to March 23, 1933, on which date while loading a lump of coal into a mine wagon, he again injured his back in the nature of a sprain. He immediately reported to the mine foreman who ordered

him out of the mine. Claimant, upon reaching the outside, went to the office of the defendant company where he received a slip to go to the doctor. The claimant was removed from the office to his home by automobile and the doctor called to attend him at his home." ......

"Sixth: We find as a fact that prior to accident on November 4, 1932, the claimant was a good steady worker, worked without complaint, more particularly as to his back, that he sustained an injury by accident to his back in the nature of a 'sprain' resulting in total disability for a period of twenty-two (22) days; that he again injured his back by accident in the nature of a 'sprain' on March 23, 1933, as the result of which he became immediately totally incapacitated; and that as a result of his 'sprain' of the back he has been totally incapacitated to the present date and will likely continue to be so disabled indefinitely."

Appellant contends that, although the claimant had suffered a series of injuries to his back while performing hard work, yet, these injuries were caused by the congenital condition of his back and that there was no evidence to show that at the time of the said alleged injury, the claimant, although engaged in hard work, was not performing his usual and regular duties, such as he had been accustomed to doing; and that there was no unusual exertion on his part and no unforeseen and fortuitous event and that therefore the case was not compensable.

Our duty, on appeal, is to examine the record to determine whether the findings of fact made by the referee and the board are supported by legally competent evidence, and whether, on such findings, the law has been properly applied: Smith v. Welsh Bros., 102 Pa. Superior Ct. 54, 156 A. 598; Watkins v. Pittsburgh Coal Co., 278 Pa. 463, 123 A. 461. We cannot weigh the evidence: Bradley v. Pioneer Oil Co., 109 Pa. Superior Ct. 585, 167 A. 660. The findings of the referee

and the board have the effect of a verdict by the jury (Smith v. Welsh Bros., supra); we must review the evidence and the inferences therefrom in a light most favorable to the claimant.

Claimant testified that he started working for Saltsburg Coal Mining Company in 1927 or 1928, as a miner. Referring to the accident of November 4, 1932, he stated "we were loading boney, me and my buddy; cleaning up boney in the air course. . . . . . when we lift up that piece of boney, my back strained. Q. How large a piece of boney was it? A. I don't know. I can't hold it. It was a pretty big boney; so I can't hold it. Q. How large was it? A. About that much (illustrating). Q. About that wide—about 3 feet? About 2½ to 3 feet wide? A. Yes. Q. How thick was it? A. About that thick (indicating). Q. About a foot thick? A. Yes. Q. You were picking that up? A. Yes; I was picking it up. . . . . . . Q. And after you picked up this boney, what happened; what did you feel? A. Why, I couldn't work no more. I told my buddy, 'I am sore,' 'I can't work no more.' . . . . . . 'my buddy back there (indicating) gave me something to rub the back and then after we were down to Salina and we call Dr. Campbell and he put plaster on my back and give me pills for the pain and I stay five (5) days in bed and after five days I got up and Dr. Campbell tell me to come and keep up the treatment. . . . . . . After 22 days I went back to work . . . . . . Q. Did you go back to your regular work; loading? A. Yes. Q. Work with the same buddy again? A. Yes. Q. You worked up until March 23d? A. Yes. . . . . . . Q. When you were hurt in March 23, 1933, what were you doing; how did that happen? A. We were pushing a car. My buddy. Q. Same buddy? A. Yes. Q. Carmelo? A. Yes. And I reached for lump of coal to throw in the car and my back sprained again; and the mine foreman came in and said, 'What's the matter, Benny?' and I told him

I sprained my back some place and lay around ten minutes ...... My buddy pick me up and bring over dinner bucket and mine foreman went around after that. So the motor come and put empty car on tail-end of trip and take me out. ...... Q. How large was the piece of coal? (referring to March 23, 1933) A. I don't see how big it was. Q. Throwing it in with the shovel? A. Yes. Q. How large was it? A. Well, maybe that big (illustrating). Maybe 50 pounds. Q. And when you threw this lump in the wagon your back hurt you again? A. When I throwed that lump in the wagon my back sprained over again. I couldn't move any more. Q. Could you walk out of the mine? A. No. They had to pick me up in car and take me home. Q. Has Dr. Campbell been treating you since March 23, 1933? A. Yes. He sent me to the hospital after ten (10) days."

Camelo Rami, called on behalf of claimant, testified that he had been working with claimant for six or seven years for the Saltsburg Coal Mining Company; that on November 4, 1932, he (claimant) got a chunk of boney. "He went to pile it up on the gob and so when he got this boney here he feel his back. He just lay down. He no can work and no can go no place." "Q. How large was this piece of boney? A. Piece boney, I don't know how many pounds it could be—about around 150 pounds. About 1 foot thick. Q. About 1 foot thick? A. About that long (indicating). Q. About 3½ feet long. A. Yes. Q. And you say it would weigh over 150 pounds? A. Yes. Q. Was he lifting it by himself? A. Yes, he was lifting it by himself. ...... Yes. He lift up with shovel lump coal and laid down there and said he can't work no more and I put him in empty car and motor come and take him outside and see George Adams. He put some clothes on him and put him in car and sent him home. Q. George Adams; he is the superintendent? A. Yes.

Q. Did you tell George Adams about lifting this piece of coal in the shovel? A. Yes."

Dr. C. B. Campbell testified that he saw claimant professionally November 5, 1932, at which time claimant was complaining of a painful back; the doctor received a history of lifting a coal car on the day before, and, following examination, diagnosed the condition as a "sprain of the back;" the back was treated for seven days at that time, after which time the back was strapped and the claimant ordered to work, with the advice to return—if he was unable to carry on—for further treatment; claimant returned and was treated in all a total of 21 or 22 days; following which he returned to work. The doctor next saw him following the accident of March 23, 1933 (the same day) at his home in bed suffering with muscle cramps and complaints of pain; the finding of muscle cramps evidenced to the doctor, objectively, a sprain of the back, and the doctor kept him in bed, strapped him and gave him sedatives to relieve his pain. The condition did not respond to treatment and the doctor had him removed to Tarentum Hospital on the 26th or 27th day of March and returned home on April 13; again returned to the hospital for further treatment April 19th, the last date the doctor examined him. It is the doctor's opinion that the prognosis of claimant's back condition is very bad, that work will aggravate the condition. The doctor, on being recalled on behalf of defendant, testified that claimant is subject to back disability whether he is involved in a traumatic cause or not.

No question arises as to whether the claimant was acting in the course of his employment at the time of the injury. The sole question presented by this appeal is whether the accident is compensable, within the meaning of the compensation act.

Appellant contends that the injuries sustained were

not the result of an untoward occurrence, not expected or designed, a mishap or fortuitous happening, aside from the usual course of events. It cites, in support of its position, inter alia, the case of Pelusi v. Mandes et al., 109 Pa. Superior Ct. 439, 167 A. 456. In that case, the claimant showed that her husband's death resulted from violence to the physical structure of his body, a rupture of an aneurysm of the ascending arch of the aorta, but failed to adduce any evidence that the violence was occasioned through the happening of any occurrence in the course of his employment calling for any extra exertion or strain, other than that required by his usual and ordinary labor for the day.

Quoting from the opinion of the lower court in the instant case, GRAFF, P. J.: "It must be considered that the injury in this case did violence to the physical structure of the body. It is not necessary that there be a battery, in order to produce a violent change in the human organism. A severe sprain, causing injury to the back, is clearly not a happening which is natural and usual, or to be foreseen as the result of loading rock or coal during a miner's course of employment. It must be considered a mishap, an untoward event, which is not expected or designed, and consequently an accident within the meaning of the compensation law. We have many decisions of the Appellate Courts to sustain this conclusion. In Smith v. Pittsburgh Coal Co., 71 Pa. Superior Ct. 325, disability resulted from a strain caused by lifting the end of a coal car. In Murray v. Brown, 107 Pa. Superior Ct. 516, the injury resulted to the appendicial region as the result of a sprain in lifting heavy bags of flour. Again, in Wolford v. Geisel M. & B. Co., 262 Pa. 454, the injury resulted from a strain in moving a heavy piano. In Zagwisky v. Lehigh Valley Coal Co., 295 Pa. 71, the injury resulted from a strain while engaged in lifting a plank; and in Hamilton v. Penna. R. R. Co., 298 Pa. 22, the

injury resulted from a sprain in lifting a heavy weight. In each of these cases compensation was allowed. See also: Calderwood v. Con. Lumber & Sup. Co., 91 Pa. Superior Ct. 189."

The testimony warrants the conclusion that in the performance of claimant's work at the time of the accident, he suffered a sprain in the back, something that would not occur ordinarily in the usual course of mining. Under these circumstances, it sustains the position of claimant that the accident and injury were not the natural and probable consequence of his employment, and could not be foreseen as such. The sprain constituted the accident. While Doctor Campbell did testify that claimant would be subject to a back condition at any time, his other testimony indicated an accident and objective evidence of a sprain, viz: muscle cramps.

The other cases cited by appellant are readily distinguishable from the instant case. For a review of the authorities, bearing on the question in this case, see Pelusi v. Mandes, supra; McFadden v. Lehigh Navigation Coal Co., 111 Pa. Superior Ct. 501, 170 A. 314; Murray v. Brown, 107 Pa. Superior Ct. 516, 164 A. 138.

A careful examination of the testimony leads us to the conclusion that there was sufficient legally competent evidence to warrant the findings of fact of the referee and the board, and that the court did not err in entering judgment on the award.

The assignments of error are overruled and judgment affirmed.