Barr *v.* Atlantic Elevator Company
(Manufacturers' Casualty
Ins. Co., Appellant).

Argued September 29, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Jay B. Leopold,* for appellant.

*Carlos Berguido, Jr.,* of *Brown & Williams,* for appellee.

OPINION BY KELLER, P. J., November 13, 1936:

The controlling factor in this workmen's compensation case was a question of fact, not of law. The ultimate fact finding body, the board, approving the findings of the referee, decided that question in favor of the claimant. This requires us to sustain the award and affirm the judgment, if there was competent evidence to support it.

Claimant's husband, William M. Barr, was employed by the defendant on inspection and repair work—about three-fourths of his time being given to inspection and one-fourth to repair service—the latter being the heavier work. He was fifty-five years old, in good health, had not consulted a physician for some years and the post-mortem held after his death revealed no heart condition that was unusual for a man of his age.

On Sunday, October 16, 1932, he left his home about 7:30 o'clock in the morning, in good health—"perfectly all right"—and went to the Professional Building in Germantown to do some repair work on an elevator. His job there was to put new cables on the elevator. He had a mechanic under him to help him. They got their tools—each kit or chest weighed sixty to seventy-five pounds—and put them with the four new cables and appliances on the elevator and took it up to the top floor, the fourth. They put the cables off at the fourth floor, took the car down to the second floor, where the car was hoisted on chain block, and the old cables were taken off by his assistant while Barr went up to the fourth floor and from there carried the cables, which weighed sixty pounds apiece, or 240 pounds in all, from the fourth floor up a flight of stairs sixteen or eighteen feet high to the roof, where he stretched them out. This took him ten to fifteen minutes. On

coming down from the roof he complained of a sharp pain in his heart, and went to a drug store to get something to relieve it and on coming back worked for about half an hour when the pain became too great for him and he went up to the fourth floor and lay down in the ladies' rest room. His assistant found him there about an hour later, lying in a sweat, with his clothes off, complaining of the pain about his heart and saying that he wanted to go home. He went home and was put to bed. He consulted a physician, attended several hospital clinics and after working sporadically, when able, until November 18, 1932, he consulted a heart specialist who ordered immediate and complete rest. He diagnosed the trouble as coronary occlusion, which means that one of the coronary blood vessels of the heart had been occluded or blocked. He treated the patient continuously from November 18 until December 30, when he died. A post-mortem was held which substantiated the diagnosis and established coronary occlusion as the cause of death. The heart specialist testified positively that the coronary occlusion was precipitated by the unusual exertion of carrying the cables, etc. on October 16th.

This case is entirely different in its facts from cases like *Pelusi v. Mandes,* 109 Pa. Superior Ct. 439, 167 A. 456, *Mooney v. Yeagle,* 107 Pa. Superior Ct. 409, 164 A. 82, *O'Neill v. Lehigh C. & N. Co.,* 108 Pa. Superior Ct. 425, 429, 165 A. 60, *Lesko v. Lehigh V. Coal Co.,* 270 Pa. 15, 112 A. 768, and similar cases, where the condition of the employee's heart or circulatory system was such that any exertion was liable to bring on a fatal attack or his death might occur at any moment without special exertion. Here the employee's heart was in a reasonably sound condition prior to October 16, 1932. While his assistant testified that when Barr arrived at the building that morning he complained of not feeling well and that on one occasion three years

previously he had spoken of a pain about the heart, the evidence of the wife was opposed to this. Her testimony, in conjunction with the medical testimony, would sustain a finding that he was not suffering from any serious heart condition prior to the exertion of carrying the cables up to the roof, and that the strain and exertion of carrying the cables to the roof precipitated the coronary occlusion which resulted in his death.

While it was not unusual for claimant's husband to work on Sundays and while about one-fourth of his working time was devoted to construction and repair service, which is heavier work than inspection, to which three-fourths of his working time was devoted, the referee well said, there was no testimony that the carrying of cables of this weight up flights of stairs was in the line of his usual and ordinary work. But irrespective of this, the distinction made by the learned President Judge of the court below between cases like this one and those just above referred to, is sound: "Where, on the other hand, a sound heart is affected by a severe exertion, and has not before been so affected, the inference is fair that the exertion which affected the heart, while it was of the same sort, must have differed in degree from that which was usual. It must have, as a fact, been more severe than usual and should be classified with those fortuitous physical violences of the bodily structure, which are properly described as accidents. The work may be of the same 'sort' or character as that called usual, but must have been harder than ordinary, or the sound heart which had theretofore stood it would not have yielded to it ...... If the heart is sound and has stood customary hard work for years, and if on a particular day it weakens, the inference is that the exertion was unusual, not that the heart was weak. Therefore, the inference is not that death was caused by a weak heart, but was caused by unusual exertion."

The case is more nearly governed by the principles laid down in *Melini v. Saltsburg Coal Mining Co.,* 119 Pa. Superior Ct. 356, 362, 181 A. 330; *Cowell v. Woolworth,* 119 Pa. Superior Ct. 185, 180 A. 752; *Betts v. American Stores,* 105 Pa. Superior Ct. 452, 161 A. 589; *Witt v. Witt's Food Market,* 122 Pa. Superior Ct. 557, 186 A. 275; *Calderwood v. Consolidated Lumber Supply Co.,* 91 Pa. Superior Ct. 189; *Tracey v. Phila. & Reading C. & I. Co.,* 270 Pa. 65, 112 A. 740; *Samoskie v. Phila. & Reading C. & I. Co.,* 280 Pa. 203, 205, 124 A. 471; *Skroki v. Crucible Steel Co.,* 292 Pa. 550, 141 A. 480; *Murray v. Brown,* 107 Pa. Superior Ct. 516, 164 A. 138, and kindred cases.

The judgment is affirmed.