Freeman *v.* Salem Reformed Church (Aetna Life Ins. Co., Appel.).

Argued November 18, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Wayne E. Barber,* with him *Fox & Fox* and *Arthur M. Eastburn,* for appellant.

*Webster Grim,* of *Grim & Grim,* for appellee.

OPINION BY JAMES, J., January 29, 1937:

This is an appeal by the insurance carrier from an award of compensation by the referee and affirmed by the board and the court of common pleas.

Claimant was employed as a clergyman and pastor by the Salem Reformed Church of Doylestown, Pa.

The referee found in part as follows: "5. That on December 29, 1933, while working in the employ of the defendant, the claimant sustained an accident in that while proceeding in his automobile to the residence of an elder [Elder Fretz] of his congregation who had just died, in order to make arrangements with the family for the decedent's funeral, a tire chain became detached and upon alighting from his said automobile to adjust the tire chain, he was struck by a passing automobile and sustained injuries ......"; and further concluded, as a matter of law, that the accident occurred in the course of his employment. These conclusions were affirmed by the board, holding that when claimant left his sister's home to go to the home of Elder Fretz to make arrangements for the funeral, he was engaged in the furtherance of the business of his employer.

As we view the record, the testimony was as follows: On December 29, 1933, about 4 o'clock in the afternoon, claimant received a call from Philadelphia that Fretz, an elder, had died and that claimant was to go to the deceased's home in Doylestown to make arrangements for the funeral between 7 and 8 o'clock that evening. Claimant then went to the home of another elder, but because he was eating dinner, he did not see him and claimant had sufficient time to visit his sister at Allentown twenty-eight miles away. While there, he delivered some Christmas gifts, had dinner and then left for the home of Elder Fretz in Doylestown. On the return trip over the Bethlehem Pike north of Shelly Station in Bucks County, about twenty-two miles north of Doylestown, the accident happened.

Our duty on this appeal is to examine the record and determine whether the findings of fact, made by the referee and the board, are supported by legally competent evidence, and whether on such findings, the law has been properly applied: *Bradley v. Pioneer Oil Co.,*

109 Pa. Superior Ct. 585, 167 A. 660; *Melini v. Salts-burg C. Mining Co.,* 119 Pa. Superior Ct. 356, 181 A. 330; *Trimbath v. Penn. M. L. Ins. Co.,* 119 Pa. Superior Ct. 371, 181 A. 383. The question for us to determine is whether under the facts the injury, sustained by the claimant, occurred while he was "in the course of his employment" within the meaning of section 301, article 3 of the Workmen's Compensation Act (Act of June 2, 1915, P. L. 736, 77 PS §411) ; that is, whether he was actually engaged in the furtherance of the business or affairs of his employer. The term "course of his employment" has necessary relation to the fact of employment while on the premises, and a still closer relation to the fact of employment when injury occurs off the premises. In the latter case, the employee must be actually engaged in the master's business: *Palko v. Taylor-McCoy C. & C. Co.,* 289 Pa. 401, 137 A. 625; *Heck v. Bellevue U. P. Ch.,* 86 Pa. Superior Ct. 77; *Haley v. City of Phila.,* 107 Pa. Superior Ct. 405, 163 A. 917.

Claimant's occupation was designated as a "minister of the Word" to preach the gospel, to exercise pastoral oversight, to dispense the holy sacraments in conjunction with the elders, to administer Christian discipline and to give himself wholly to Christ in His church. Under such a calling it is difficult to define the exact boundaries of such employment, but it undoubtedly was the purpose of the employment that claimant's ministrations were in behalf of the members of the Salem Reformed Church and cannot be so extended as to include all and every activity of such individual. Clearly the language "in the course of his employment" could not be extended to cover claimant's speaking engagements or the errands which claimant had made for his wife, who was sick, a short time prior to the telephone call. The language of President Judge KELLER in

*Zenker v. Zenker,* 93 Pa. Superior Ct. 255, is particularly applicable when he says: "It seems clear to us that the act contemplates the insurance of an employer with respect to the business which he is carrying on—not with respect to roving errands wholly disconnected and apart from the business which the employer is conducting and with respect to which he secures compensation insurance."

Appellee argues that claimant left his home to go by a circuitous route to the home of his deceased parishioner. He had a personal mission on the way, and the accident occurred not when he was returning from that mission, but after it had ended, when he was still on the road to the parishioner. This reasoning we cannot follow. To permit an employee to fix his own limitations far beyond the sphere of his normal activities, would be to avoid the very language of the act. It certainly cannot be regarded that going a distance of approximately sixty miles was the usual method of performing his pastoral duties, when a journey of a mile or so, within the limits of the borough, was all that was necessary. As we view these facts, the deviation from claimant's employment was so substantial as to amount to an entire departure, and the employment was not resumed until he had at least reached a point in reasonable proximity to the sphere of his usual duties. "Re-Entry into Employment. A servant who has temporarily departed from the scope of employment does not reenter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business": Restatement, Law of Agency, §237. In support of this statement, we find no cases from our state, except those which deal with situations in which a servant took a vehicle on a mission of his own; nevertheless, we recognize it as a general principle applicable to the relation

of master and servant. Although in the application of such principles, to cases arising under the Workmen's Compensation Law, our courts have favored a liberal construction, we are convinced that at the time of the accident, claimant had not re-entered his employment.

Appellee relies upon *Graham v. Henderson,* 254 Pa. 137, 98 A. 870, as being decisive of the present case. The late Justice STEWART said: "We are of opinion that the license, if given, expired when the visit to the brother was accomplished and that on the return drive, when the accident happened, the chauffeur was acting not on his own but on his master's business." It will be noted this observation was made in reference to a mission for which consent was given, if the jury so found. The court clearly distinguished between the use of the car without the master's consent, in which event no liability of the master followed until the return of the car to the proper place, and the use of the car with the consent of the master, in which event the master became liable upon the return journey. In *Hannis v. Driver,* 68 Pa. Superior Ct. 548, 552, Judge KEPHART (now Chief Justice) said in commenting upon *Graham v. Henderson,* supra: "The owner was held liable because the relation of master and servant was resumed when the servant again acted under the specific instructions of the master. The car was then being operated and controlled under the owner's orders. It was in obedience to this express direction that he was returning to meet him at a designated place."

The judgment is reversed and the award of the referee, as approved by the Workmen's Compensation Board, is set aside: *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358.