## Roland v. Frantz et al., Appellants.

Argued November 14, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Allan K. Grim,* with him *Stevens & Lee,* for appellants.

*C. Wilson Austin,* with him *John W. Speicher,* for appellee.

OPINION BY BALDRIGE, J., December 27, 1938:

This appeal in a workmen's compensation case is from a judgment entered by the court below upon an award by the board.

Paul Roland, the deceased, 47 years of age, was a tinsmith. On July 18, 1935, from about 12 noon D. S. T., to 2 o'clock, he worked for his employers on the roof of a new school building in the city of Reading. From then until 4 P.M. he was engaged in installing an 18- or 20-inch ventilating pipe under and in close proximity to the roof in a space about 4-½ feet high.

Henry E. Hathaway, the official in charge of the United States Weather Bureau in Reading, testified that the temperature that day varied from 84 to 86 degrees in the shade and was approximately 20 degrees higher in the sun. The humidity at noon was 54 degrees and kept increasing until that evening it reached 70, about 4 degrees above the average for that date. In answer to the question whether, taking into consideration the humidity and the temperature, he would regard the weather that afternoon as close and oppressive, the witness stated: "Yes, a little above the average."

About 4 o'clock the deceased was requested by one of his fellow-workmen to hand him a bucket containing paste used to seal the joints of the pipes with which they were working. As he was about to do so, he suddenly

collapsed. His appearance then was described as being "very white, lacking of color, and his eyes were open." He was immediately taken to the hospital where he was found to be dead.

The claimant, widow of the deceased, testified that her husband had worked for the defendants 11 or 12 years, but owing to the depression had been laid off for a period. He was subsequently re-employed and had been working 3 or 4 weeks prior to the date of his death. She gave no information relative to the previous condition of her husband's health.

Dr. Curry said that he had been the Roland family physician for the past 10 years, but that his professional services to the deceased were confined to attending him for a broken leg in 1924 and treating him in 1934 for a common cold.

Dr. Glick, the coroner, stated that no post mortem was held and that his examination consisted simply of viewing the body. After he examined the hospital record, he issued the certificate in which the cause of death was stated as "cardiac disease."

The last witness called in behalf of the claimant was Dr. Rorke who had never seen the deceased. In answer to hypothetical questions embodying the essential facts, to which no exception was taken, he expressed, as his professional opinion, that the deceased had a cardiac condition and that "he certainly had as a contributory cause the very oppressive climatic conditions that existed below that roof." His testimony proceeded as follows: "Q. Doctor, assuming there was no heart condition, what would be your answer? A. My answer would be that I have no right to assume no heart condition. That picture shown by the witnesses, and particularly those in immediate contact with him, and the medical testimony, I would certainly take the view that was his underlying condition, and that that condition was aggravated by the climatic condition under which he was working."

The testimony offered upon the part of the defense was that the deceased died of acute cardiac failure which was not attributable in any way to his employment or to the conditions under which he was working.

The referee disallowed compensation on the ground that claimant had failed to show by competent evidence that the deceased died as a result of an accident. Upon appeal to the board, the referee's decision was reversed. The board found that the "death of decedent was due to acute cardiac failure of heart caused by, aggravated and accelerated by the extreme heat while in the course of his employment with the defendant."

The question before us is whether there was any competent evidence to support that finding. There was no testimony whatever that prior to the decedent's death he was afflicted with a heart condition or that he had any symptoms indicating that his heart was otherwise than normal. But it was on the assumption, unsupported by sufficient testimony, that a heart condition existed that Dr. Rorke testified that the oppressive climatic conditions under which the deceased was working were a contributory cause of his death.

It may be that this employee's heart was somewhat impaired but reasonably sound, free of any serious affliction (*Barr v. Atlantic Elevator Co.*, 124 Pa. Superior Ct. 57, 187 A. 815), and that by reason of his condition he was more liable to be stricken than a man without any heart weakness. But that in itself would not deprive claimant of an award. We said in *Lafferty v. Carbo-Oxygen Co. et al.*, 122 Pa. Superior Ct. 425, 427, 185 A. 883: "The fact that the deceased had a chronic ailment which made him more susceptible to an injury than an ordinary person will not defeat his right to compensation. On the contrary, if the pre-existing ailment was aggravated and his death accelerated by the injury, then under the law he was entitled to compensation."

The appellants argue that this case comes within our

rulings in *Diriscavage v. Penna. Coal Co.,* 96 Pa. Superior Ct. 189; *Mooney v. Yeagle et al.,* 107 Pa. Superior Ct. 409, 164 A. 82; *O'Neill v. Lehigh C. & Nav. Co.,* 108 Pa. Superior Ct. 425, 165 A. 60; *Pelusi v. Mandes et al.,* 109 Pa. Superior Ct. 439, 167 A. 456; *McFadden v. Lehigh Nav. Coal Co.,* 111 Pa. Superior Ct. 501, 170 A. 314. In each of those cases, the condition of the employee's heart or circulatory system was such that a slight exertion was liable to bring on a fatal attack at any moment without his being subjected to an unusual condition.

The main difficulty that confronts us with the record in its present shape is the lack of information pertaining to the deceased's state of health before his death. The testimony now before us is insufficient to support the conclusion reached by the board. We are of the opinion, however, that the claimant should have an opportunity to develop additional facts relative to the actual state of her husband's health prior to his death, and to produce further medical testimony based thereon. Then this claim can be disposed of on its merits, as it should be.

It well may be that when all the facts are fully established, this case will come within the principles laid down in *Lane v. Horn & Hardart Baking Co.,* 261 Pa. 329, 104 A. 615; *Skroki v. Crucible Steel Co.,* 292 Pa. 550, 141 A. 480; *Clancy v. Booth & Flinn Co. et al.,* 109 Pa. Superior Ct. 452, 167 A. 393; *Consentino v. Union Paving Co.,* 113 Pa. Superior Ct. 295, 173 A. 470; *Trovato v. W. J. McCahan Sugar Refining Co. et al.,* 122 Pa. Superior Ct. 499, 186 A. 163. If so, the claimant will be entitled to an award.

The judgment is reversed, and the record remitted to the court below with directions to return it to the board for further action.