### Camilli *v.* Pennsylvania Railroad Company, Appellant.

Argued April 17, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*R. E. Best,* of *Smith, Best & Horn,* with him *Portser, Gregg & McConnell,* for appellant.

512

*George H. McWherter,* for appellee.

OPINION BY HIRT, J., June 27, 1939:

Defendant employer has appealed from a judgment in favor of claimant entered in the court below, sustaining the award of the Workmen's Compensation Board. The questions raised on this appeal go not to the facts, for there is little dispute, but to the inferences to be drawn from them. From the record we find sufficient competent evidence to sustain the findings of the Board that on September 7, 1937, claimant sustained a hernia in the course of his employment and that the injury was the result of an accident.

Plaintiff's status was that of a machinist's helper but because of a shortage of help he was assigned to work as a general utility man "doing a little bit of everything." He was 66 years of age. When injured he "had thrown" a piece of ice weighing from twenty-five to thirty pounds into a tank of drinking water on a locomotive. The top of the tank was three feet above his head. He immediately suffered pain in the left groin, became weak and started to vomit. These are the symptoms of an acute hernia. He never before had a rupture on the left side, but for some time had had a right inguinal hernia for the control of which he wore a truss; he therefore was familiar with the sensations identifying the injury. He at once reported his condition to his acting foreman and said to him, "I believe I ruptured myself on the left side." In this he was corroborated by the foreman. In the interval of an hour and forty minutes before quitting time claimant was unable to do further work except to help remove the mail from an incoming train. Two hours later he saw his family doctor who examined him and found a small protruding mass in the left inguinal region, indicative of a hernia of recent origin. Later he was referred to the Chief Medical Examiner who sent him to the Allegheny General Hospital for exami-

nation. The Company's doctors who examined him did not testify. Because of claimant's age and disability he was considered a bad risk and for that reason has not submitted to a surgical operation. His injury has completely incapacitated him and he has been unable to do any work.

This testimony is sufficient to overcome the statutory presumption that the hernia was a gradual development. There was an immediate descent of the hernia, precipitated by sudden effort or severe strain; there was actual pain in the hernial region, and these manifestations were of such severity that they were immediately noticed by claimant and were reported at once to a representative of his employer. Conclusive proof therefore classifies this injury as an acute hernia, compensable under the amendment of April 13, 1927, P. L. 186, Sec. 306(g). Moreover, the testimony supports the conclusion that the hernia resulted from " 'violence to the physical structure of the body,' a phrase which includes not only the application of external force but also injury to the physical structure from an unusual strain:" *Berner v. P. & R. C. & I. Co.,* 100 Pa. Superior Ct. 324. Where the injury is wholly within the body, proof of the accidental cause often must rest upon circumstances attending it: *Betts v. American Stores Co.,* 105 Pa. Superior Ct. 452, 161 A. 589; *Roland v. Frantz,* 134 Pa. Superior Ct. 24, 3 A. 2d, 279. Particularly is this true of a hernia, an injury which often results from lifting a weight not in itself excessive, but done in such a manner as to produce undue strain. The posture of the individual while lifting, and not the weight, may determine the result. An injury so caused may be regarded as an unexpected or fortuitous event or happening. "It is not the lifting that constitutes the accident, but the strain or sprain resulting therefrom ...... An injury by accident may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain, or twist causes a

break or sudden change in the physical structure or tissues of the body:" *Witt v. Witt's Food Mkt.*, 122 Pa. Superior Ct. 557, 186 A. 275.

Claimant at the time of his injury was not engaged in interstate commerce. The locomotive upon which the accident occurred was stationed in the railroad yard at Derry and was about to haul a work train, loaded with a crawler crane, to a contractor for use in repairing the main line tracks of the Unity Branch near Milford, and with slag and cinders to be used in filling a washout on the roadbed. Steel from the Latrobe Steel Spring Co. and coal from a mine were transported over the Unity Branch as well as on the main line of defendant railroad in both intrastate and interstate commerce. The applicable principle has been stated by Judge PARKER in *Gasser v. Central R. R. of N. J.*, 112 Pa. Superior Ct. 420, 171 A. 97, quoting *Shanks v. D. L. & W. R. Co.*, 239 U. S. 556, as follows: "The true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" The opinion in that case concludes: "There has been a manifest tendency in the recent decisions of the United States Supreme Court to exclude from the benefit of the Federal Employers' Liability Act those who are only remotely concerned in interstate commerce and where they were not at the time of the accident actively engaged in work closely related to such transportation so as to be practically a part of it." To the same general effect are *Chicago and Eastern Illinois R. Co. v. Industrial Comm. of Ill.*, 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 304; *Chicago B. & Q. R. Co. v. Harrington*, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; *D. L. & W. R. R. v. Yurkonis*, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; *Chicago and N. W. Ry. Co. v. Bolle*, 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 173. On such question the decisions of the Supreme Court of the United

States are controlling: *Mason v. Reading Co.*, 129 Pa. Superior Ct. 289, 195 A. 754.

Claimant's work at the time of his injury had no relation to the actual operation of the locomotive or the movement of the train. He was putting ice into a tank of drinking water for the convenience and comfort of the train crew. The relation of the act in question to interstate transportation was extremely remote, and applying the test announced in the above cited cases it is apparent that claimant, at the time of the accident, was not engaged in interstate transportation or work so closely related to it as to be practically a part of it.

Judgment affirmed.