Kirker *v.* W. M. McIntosh Co. et al., Appellants.

Argued October 23, 1944.  Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Russell R. Yost,* with him *Graham, Yost, Meyers & Graham,* for appellants.

*John M. Bennett,* with him *Weimer, Bennett & Jones,* for appellee.

OPINION BY BALDRIGE, J., November 21, 1944:

The appeal in this compensation case is from a judgment entered on the award granted to the widow of Charles W. Kirker, who was killed as a result of overturning of defendant's truck which he was driving.

None of the facts are in dispute. The only question before us is: Was the deceased in the course of his employment at the time of the fatal accident?

Kirker for a number of years was employed by defendant as a driver of a heater truck, equipped with a large water tank and a kerosene burner, used to heat cold road surfacing material in railroad tank cars. He lived in Butler, where the truck was kept and from there he drove to various sidings where the railroad cars were located. He did not work regular hours or at a definite place. At times he would be away from home for several days. A manual issued by the employer forbade the use of trucks for joy rides, although in practice they were used by employes to drive to meals. He left home on September 21, 1941, with instructions to heat road material at Hooker, Fennelton, Kittanning, and New Bethlehem. He finished his work at Hooker and returned home. The next day he left for New Bethlehem, arriving there during the afternoon. While there he heard from O. E. Epperley, the driver of a spreader truck into which the road material was to be loaded when heated, that the tank cars at New Bethlehem were not to be heated until Tuesday morning, September 23. Kirker arranged then to meet Epperley in Clarion, approximately 17 miles from New Bethlehem. He arrived there at 5 o'clock that afternoon and filled his tank with kerosene. His duties for that day were then ended. In company with Epperley he went to a hotel, drank a few glasses of beer and from there went to a diner to eat. About 9 o'clock they left in the heater truck for Lucinda, about 10 miles north of Clarion. There they met two friends, Snyder and Sloan. These four men, two of them in the heater truck, then drove 6 miles further north to Tylersburg. They stopped there at Louie Zai's eating and drinking place, where they ate spaghetti and Kirker took another drink. Kirker and

Epperley left there at midnight, and returned to Lucinda where Epperly was refused drinks at the hotel. They remained in that town a half hour when they left, with Kirker driving the heater truck. There is no evidence concerning their movements thereafter until the accident. Between 3:00 and 3:30 A. M. Kirker failed to negotiate a curve at the intersection of routes 322 and 68, 3 miles northwest of Clarion, and the truck went over a 6 foot embankment, toppled over on its side, pinning Kirker underneath and killing him. Epperley, who was asleep at the time, escaped serious injury. Kirker had told several people during the evening of his intention to return to New Bethlehem at 4:00 A. M. to heat the material in the tank cars.

The referee refused compensation on the ground that the claimant failed to prove deceased met death while in the course of his employment. The board reversed the referee and made an award, which the court of common pleas affirmed. The defendant and insurance carrier appealed.

While there is proof that Kirker had been drinking during the evening, there is no contention by the appellants that he was intoxicated. Claimant concedes that the deceased was on a personal pleasure trip when visiting eating and drinking places north of Clarion. Her contention is that when the accident occurred her husband was so near resumption of his work, both in time and space, that he had re-entered the course of his employment. Assuming that when he obtained the kerosene at Clarion he was in the course of his employment, from that point on he certainly was not engaged in furthering the business of his employer under the undisputed facts. The pleasure trip began at Clarion, to which point he intended to return, and was not a slight, but a substantial, departure from any route he was required to take for business purposes. It can be viewed in no other light than a voluntary abandon-

ment of his work for a temporary period.

We concede that it is for the board in compensation cases to determine the issues of fact and when its findings are based on competent evidence they are conclusive. But whether this deceased when killed was in the course of his employment under found facts, is a question of law: *Paulin v. Williams & Co.*, 122 Pa. Superior Ct. 462, 467, 186 A. 415, affirmed in 327 Pa. 579, 195 A. 40. This accident having occurred off the employer's premises, the burden was upon the claimant to prove that deceased was engaged in a furtherance of the business or *affairs* of his employer: *Knowles v. Parker Wylie Carpet Co.*, 129 Pa. Superior Ct. 257, 195 A. 445. She failed to carry this burden.

In *Hess v. Catholic Knights of St. George et al.*, 149 Pa. Superior Ct. 575, 577, 27 A. 2d 542, in an opinion written by Judge HIRT, we pointed out that the change in the amendment to the Act of June 4, 1937, P. L. 1552, §301c, 77 PS §411, from "actually engaged in the furtherance of the business or affairs of the employer" to simply "engaged" does not modify, nor enlarge the class of compensable accidents under previous statutes. The liability of the employer still must be confined to compensation for injury in the course of employment. One cannot be engaged in the furtherance of the master's business without being actually engaged therein. See, also, *Fulwiler v. Mack-International Motor Truck Corp.*, 137 Pa. Superior Ct. 421, 9 A. 2d 173.

Appellee stresses our reference to section 237 of the Restatement, Law of Agency, in *Freeman v. Salem Reformed Church*, 125 Pa. Superior Ct. 367, 190 A. 159, and *Ginther v. J. P. Graham Transfer Co.*, 149 Pa. Superior Ct. 635, 27 A. 2d 712, reversed on another point in 348 Pa. 60, 33 A. 2d 923. Section 237 reads as follows: "A servant who has temporarily departed from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time

limits and is acting with the intention of serving his master's business." In comment (a) it is stated that if "...... the servant departs too far from the space or time limits, he is no longer acting within the scope of employment. The same rule applies to re-entering the employment. He cannot re-enter it, however much he desires it, until he is within the flexible limits of employment. This does not necessarily mean that he must return to the point from which he diverged when beginning to act for a purpose of his own. As he may make a detour for his own purposes without ceasing to be in the scope of employment, so in returning to the service he may re-enter the employment before reaching the limits fixed in his authorization. On the other hand, *the mere fact that his own business is over and that he intends to return to the employment or to use the instrumentalities for the master's business does not cause him to be within the scope of employment ......*" (Italics supplied.)

A careful reading of the *Freeman* and *Ginther* cases, supra, shows they do not purport to adopt in its entirety the principles of Restatement quoted, and in neither case was that principle relied upon. In the *Freeman* case the minister was 22 miles from the place where re-entry may have occurred, and compensation was denied. In the *Ginther* case the truck driver had returned to the route he would have taken if there had been no departure. We cannot escape concluding that Kirker at the time of his death was engaged in a purely personal matter and at a place where his business did not require him to be.

Judgment is reversed and entered for defendant.