# Clark, Appellant, v. Lehigh Valley Coal Co.

*Workmen's compensation — Referee's findings — Jurisdiction of Workmen's Compensation Board—Evidence — Death — Accidental violence to physical structure of the body—Disease.*

1. Under the Pennsylvania Workmen's Compensation Act of June 2, 1915, P. L. 736, an injury resulting in death, need not arise out of or be due to, the workmen's employment; it is sufficient if it happens in course thereof.

2. Where a workman dies in the course of his employment from a rupture of the aorta caused by "an extra effort in vomiting," the rupture itself would constitute an accidental violence to the physical structure of the body within the broad meaning of that term as defined by the courts.

3. If death comes during the course of employment, in an ordinary way natural to the progress of a disease with which one is afflicted, and with which he was stricken before the accident, there can be no recovery; but if the death is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such an injury than an ordinary person would be, will not defeat the right to compensation.

4. Where a referee finds that a miner died in the course of his employment, from a rupture of the aorta "caused by an extra effort in vomiting," such finding will support an award in favor of the claimant, and it cannot be set aside by the Workmen's Compensation Board, without a hearing de novo.

5. In such a case the question is not as to the existence of evidence, which in the opinion of the board would justify it in connecting the vomiting with the death, but was there any evidence which, within the bounds of reason, possibly could be held to sustain the referee's findings connecting the vomiting with the death? If such evidence appeared, then, albeit the board, on a hearing de novo, might draw other inferences therefrom, and reach conclusions differing from those upon the record before it, yet, in the absence of such a hearing, it was beyond the power of that body so to do; and on the pending appeal, it was likewise beyond its power to reverse the referee on the theory that he had erred, as a matter of law, in drawing deductions from the testimony differing from those which could have been made by the board.

Argued April 14, 1919.   Appeal, No. 296, Jan. T., 1919, by plaintiff, from judgment of C. P. Luzerne Co., May T.,

1917, No. 811, dismissing appeal from Workmen's Com
pensation Board reversing an award of a referee in
favor of a claimant in case of Bridget Clark v. Lehigh
Valley Coal Company.   Before Brown, C. J., Mosch-
zisker, Frazer, Simpson and Kephart, JJ.   Reversed.

Appeal from decision of Workmen's Compensation
Board.

The court dismissed the appeal.   Claimant appealed.

*Error assigned* was the judgment dismissing the ap
peal.

*Roger J. Dever,* for appellant, cited: Gurski v. Sus-
quehanna Coal Co., 262 Pa. 1; Dzikowska v. The Su-
perior Steel Co., 259 Pa. 578.

*P. F. O'Neill,* with him *F. W. Wheaton,* for appellee.

Opinion by Mr. Justice Moschzisker, April 28, 1919:

Bridget Clark, widow of Patrick Clark, sought com-
pensation for the death of her husband; the referee
found in her favor, but the Workmen's Compensation
Board reversed; the Common Pleas of Luzerne County
affirmed the board, and claimant has appealed to this
court.

The referee reported, inter alia, as follows: "The testi-
mony in this case shows that Patrick Clark, the claim-
ant's husband, was employed by defendant company in
looking after a line of pipe used for the purpose of con-
veying silt from the surface into its mine; his duties were
to keep that line in repair, and, in order to enable him to
examine it under ground, he carried an open lamp; on
the morning of February 23, 1916, his lifeless body was
found inside the mine, a short distance from this pipe-
line, and his lighted lamp about two feet away from him;
his clothing was burning and he had severe burns upon
his body; he was in a kneeling position, on his hands,

and apparently had been vomiting; that he was on the premises of his employer and engaged in the performance of his duty at the time of his death, is undisputed; that his duties required him to carry an open lamp is not denied, and no theory is advanced for the burning of his clothes and body other than that they were burned by this lamp; the medical testimony establishes the fact that death was due to a rupture of the aorta, which is a large blood vessel leading from the heart."

The report also contains these further findings: (1) "The vomiting was due to probably one of three causes, either noxious gases, the smell of the burning clothing, or fright from discovery of his clothing being on fire"; (2) deceased was afflicted with a "syphilitic condition, in which he might have lived four or five years, or his death might have occurred at any time"; (3) although this condition rendered deceased more susceptible to a rupture of the aorta, than he otherwise would have been, yet, in point of fact, the rupture was immediately "caused by extra effort in vomiting"; finally (4), deceased "met with an accident and sustained injuries which caused his death," while engaged in "discharging his duties" as an employee of defendant.

Defendant asked review by the compensation board upon the ground of lack of evidence to sustain the referee's finding of fact that "the death of decedent was due to a rupture of the aorta......, caused by extra effort in vomiting, due to one of three causes," etc.; and its appeal was classed by the board, not as raising a question of fact as to whether the evidence warranted, or justified, this finding, but rather as involving a pure point of law concerning the presence of any evidence to sustain the finding. The board decided there was no such evidence; and, therefore, set aside the referee's compensation order.

We say the appeal was classed as involving a question of law, and not of fact, because the referee was reversed without a hearing de novo, such a hearing being essential whenever the intention is to disturb findings of fact

(McCauley v. Imperial Woolen Co., 261 Pa. 312, 318-19) ; but, notwithstanding this classification, when considering the report of the referee, instead of merely searching to see if there was any evidence capable of sustaining that official's findings of fact, the board substituted its own inferences and deductions for those already upon the record; which, on such a review, it lacked power to do: McCauley v. Imperial Co., supra, page 319; Dainty v. Jones & L. S. Co., 263 Pa. 109, 113.

As some explanation of the erroneous course thus pursued, the report of the board indicates a fundamentally wrong idea of its powers and duties. For instance, it is there stated : "[1] We have no evidence that will justify us in connecting the vomiting with the death, nor [2] the burnt clothing with the vomiting"; whereas, on the appeal then pending, neither was a proper test to be applied.

We shall consider the second test first. Under the Pennsylvania statute (Act of June 2, 1915, P. L. 736) the injury need not arise out of, or be due to, the person's employment, it is sufficient if it happens in the course thereof: Lane v. Horn & Hardart Baking Co., 261 Pa. 329, 335. Here, concededly, Clark died in the course of his employment, but the question is, did he meet death as a result of accidental "violence to the physical structure of the body"? McCauley v. Imperial Co., supra, p. 327. Irrespective of anterior causes, if the vomiting took place and this "extra effort" caused the rupture of the aorta, these facts were sufficient to entitle the claimant to compensation, and it was not essential that the "burnt clothing" should be connected with the vomiting. In other words, the rupture itself, occurring from "extra effort in vomiting," would, under the circumstances, constitute accidental violence to the physical structure of the body, within the broad meaning of that term as heretofore defined by us: McCauley v. Imperial Co., supra, p. 326-7; Lane v. Horn & Hardart Co., supra.

In addition to the error just discussed, which is typical of others of a like character, the report of the board strongly suggests a mistaken view of the law relative to the bearing upon the case of Clark's diseased condition, prior to and at the time of the vomiting which brought on the rupture resulting in his death; while the fact that he suffered from a malady which, in time, might have terminated fatally, called for consideration, it was in no sense controlling. If death comes, during the course of employment, in an ordinary way, natural to the progress of a disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery (McCauley v. Imperial Co., supra, 327; Lane v. Horn & Hardart Co., supra, 333); but, if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat the right to compensation. Upon this subject see Bradbury's Workmen's Compensation Law (3d ed.), 326 to 340, where a general discussion will be found citing many cases illustrative of the trend of judicial opinion, which supports the law as we have stated it,—among others, Madden's Case, 222 Mass. 487, 494. Certain of the cases cited are governed by statutes which differ somewhat in legislative language from the Pennsylvania act; but in no instance is this difference of a character to affect the relevancy of the decision, so far as it involves the point now before us.

All of which brings us to a consideration of the first test (supra) applied in examining the referee's findings and the testimony relating to the cause of Clark's death. At this point the board mistook its powers and duties as an appellate tribunal, and thereby fell into material error. The question was not as to the existence of evidence which, in the opinion of the reviewing body, would "justify" it "in connecting the vomiting with the death," but, was there any evidence which, within the bounds of

reason, possibly could be held to sustain the referee's findings connecting the vomiting and death? If such evidence appeared (and the referee's findings indicate it did), then, albeit the board, on a hearing de novo, might draw other inferences therefrom and reach conclusions differing from those upon the record before it, yet, in the absence of such a hearing, it was beyond the power of that body so to do; and, on the then pending appeal, it was likewise beyond its power to reverse the referee on the theory that he had erred, as a matter of law, in drawing deductions from the testimony different from those which would have been made by the board; this, nevertheless, is, in effect, what the latter undertook to do.

Therefore, the conclusions of law, pretending to assert a lack of evidence to sustain the findings of the referee, having been arrived at through an examination that ignored the controlling rules which should have guided the board, cannot stand; and the only findings of fact properly before us are those of the referee. In the absence of correctly derived conclusions of law to overcome these findings, they are decisive (McCauley v. Imperial Co., supra, p. 329); thereon claimant is entitled to compensation, and the board erred in deciding otherwise, as did the court below.

The judgment of the common pleas and the order of the compensation board are both reversed; the award of the referee is reinstated and affirmed.