Keck *v.* John Mullen Construction Co. et al., Appellants.

Argued April 23, 1934.

 Before Trex-
ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ. 

*James J. Burns, Jr.,* for appellants.

*Mead J. Mulvihill* of *Mulvihill & Herron,* for appellee.

Opinion by Parker, J., July 13, 1934:

The appeal presented to us in this compensation case involves a question as to whether the claimant's decedent died as the result of an accident. The referee, board, and court below found for the claimant.

The deceased was an assistant foreman of structural iron workers employed by the John Mullen Construction Company. He had ulcers of the stomach on account of which he lost some time prior to November 16, 1932. On the morning of that day within half an hour after he started to work on iron work involved in the construction of a building, he let down two channel irons weighing at least seventy-five pounds by hand with a rope and without the use of a pulley or other hoisting apparatus. While the rope passed over the edge of some planking, Keck stood close to the edge so that it was necessary for him to bear practically

the entire weight of the iron as the rope passed through his hands and while the iron would naturally be swaying. Immediately after landing the iron his condition was described by a fellow workman as follows: "I saw Frank walk over and put his foot up on another beam, and he was holding his side, and he looked very white." A moment later another employee met him two stories below and found him in a state of collapse. He was taken home, examined by a physician, and removed to a hospital where he was operated on the same afternoon and died the following morning.

Two surgeons, one of whom performed the operation and the other attended him after the occurrences detailed, gave testimony sufficient to establish a causal connection between the injury and the death. Dr. Pierce, the operator, testified that he found a perforated ulcer about the size of a silver dollar with a "slit in its center about one-half inch long" from which a flocculent fluid was flowing. "The abdominal cavity at the time of operation was floating in this same flocculent fluid." He concluded that the perforation of the ulcer came from "excessive strain upon the abdominal muscles." On cross-examination he said: "Q. Had the erosion almost gone through the stomach? A. No, sir, except where the perforation was. As a matter of fact where the ulcer was it was thickened due to old scar tissue, apparently. This ulcer may have been present for some time, but this new thing in the center was as clean cut as though it had been done with a knife, or due to the ulcer having been subjected to extreme pressure. Q. Doctor, could this perforation have come about by the acidity in the stomach or the other causes [causes of ulcers] that you have stated previously? A. Not this type of a perforation. Q. By that you mean that this particular perforation could not have been caused by

the acidity of the stomach or the other causes that you mention? A. Yes, sir. Q. It could not have been? A. Could not.''

Dr. Rankin, the other expert, attributed the rupture of the peptic ulcer to the strain in lowering the channel iron. On cross-examination he stated: ''Q. Well, doctor, peptic ulcers are apt to flare up at any time, are they not, on the slightest provocation? A quiet ulcer, I mean, is liable to break down, I mean, at any time, due to the acidity of the stomach? A. Rupture of a peptic ulcer is a rare occasion. There are very few that rupture through into the peritoneal cavity, unless there is some strain or something put on, the patient does some unusual work or subjects the body to some unusual strain. In my thirty-six years I have seen two cases of ruptured peptic ulcers. Q. What was the cause of the other one, doctor? A. He was lifting pipe. Q. Excessive weight? A. Yes.'' He also testified that if this had been an active ulcer he would not have expected a cut that was deep or of an incised-like appearance, but would have expected a rough and round opening into the stomach.

From this testimony it is most apparent that the referee and board were justified in concluding that the rupture of the nature here shown was itself an accident, and we would not need to look further for an untoward or unusual event. (Betts v. Amer. Stores Co., 105 Pa. Superior Ct. 452, 161 A. 589.) ''If death comes, during the course of employment, in an ordinary way, natural to the progress of a disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery; but, if the demise is brought about by an injury due to some mishap, or accident, happening during the course of his employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not de-

feat the right to compensation'': Clark v. Lehigh Val. Coal Co., 264 Pa. 529, 533, 107 A. 858. Where, as in this case, there is proof of violence to the physical structure of the body which causes disability or death, that of itself is an accident unless the break, strain, rupture, or the like is but an element in the natural progress of the disease occasioned or hastened by the labors regularly performed in one's usual employment.

There is not any affirmative evidence that the work which the deceased was doing in lowering this iron was his usual employment. It might be inferred that a foreman would not usually have been engaged in the kind of work that was being performed at the time, and there was some ground for concluding that the deceased at the time he received his injury was doing an unusual thing. We prefer, however, to place our decision upon the ground first stated.

The judgment of the lower court is affirmed.