## Falls v. Tennessee Furniture Company (et al., Appellants).

Argued March 12, 1936.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*J. Webster Jones,* for appellant.

*Geoffrey J. Cunniff,* with him *Philip Dorfman,* for appellee.

OPINION BY RHODES, J., July 10, 1936:

This is an appeal by the Tennessee Furniture Company and its insurance carrier from a judgment entered by the court below upon an award of compensation to the dependent widow and children of the deceased employee, Abner Falls.

The award was based on a finding by the referee that the deceased died as the result of an accident sustained in the course of his employment. This was affirmed by the board and the lower court.

The questions raised on this appeal may be stated as follows: (1) Is there sufficient legally competent evidence to support the findings of fact and conclusion that deceased suffered an injury by accident within the meaning of the Workmen's Compensation Act? (2) If so, are appellants liable?

We shall first dispose of the second question. Appellants present the argument that there is no competent evidence to support the board's finding that the Tennessee Furniture Company was the employer of the deceased, and that therefore the appellant insurance carrier is not liable for the payment of compensation on its behalf. In view of the facts this requires but brief consideration on our part. The record shows that claimant filed her petition for compensation on May 11, 1933. The petition set forth that the deceased was employed at the time of the accident by the "Tennessee Furniture Co., 108 N. 2nd Street." Notice of the filing of the claim petition was given to the defendant-employer on May 17, 1933. The insurance carrier intervened, and, on May 27, 1933, filed an answer to the claim petition in which it admitted "the employment of the deceased and the dependency of the wife and the children named in the petition, together with the weekly wage rate, ......" At the hearing before the referee, the referee stated before the taking of any testimony: "Wages, employment and dependency admitted. ......

The only question before us is whether or not there was a compensable accident. It is admitted the deceased died of a perforated ulcer." Both sides were represented by counsel, and testimony was taken at two hearings. At the second hearing, Leo A. Wilson, a witness who was called for the defense, testified on direct examination: "Q. Mr. Wilson, you have been identified as the shipping clerk, or in charge of the shipments, and directly in charge of Falls during his employment with the Tennessee Furniture Company, that is correct, is it not? A. That's right. ...... Q. And your records and your recollection indicate a continuous employment since December of 1926? A. Yes, sir."

Considering their admissions and their own testimony, we see no merit in this contention of the appellants. No question was raised as to the deceased's being employed by some other individual or corporation until over a year after the accident. The contention is based on a rather complicated relationship between the Tennessee Furniture Company and its agency in Philadelphia. Under the facts, the Tennessee Furniture Company was properly found to be the employer of the deceased, and the intervening defendant the insurance carrier.

The testimony shows that Falls had been employed for seven years as a chauffeur and truck driver by the Tennessee Furniture Company. His duties included the delivery of refrigerators, gas ranges, and similar articles. On April 22, 1933, about 1:10 or 1:20 p. m., he delivered two refrigerators to the Strawbridge & Clothier warehouse at Ninth and Poplar Streets, Philadelphia; one weighing 129 pounds and the other 180 pounds. He unloaded both without any assistance, and no one was present at the time. The receiving clerk at the warehouse testified that, after Falls had unloaded the refrigerators and placed them on the platform, Falls brought in the receipt to be signed; that he did not

see any accident; and that Falls made no complaint to him about being hurt. From there Falls drove about twenty blocks west to 2829 Poplar Street, the home of his brother-in-law, Jerome Sweeney. He arrived about 1:30 p. m. Sweeney testified that Falls came out in the yard, leaned against the fence, with his hand above his forehead, holding his side, and tried to vomit. He declined to eat. A few minutes thereafter he and Sweeney obtained some lumber and drove together to Falls' home in Clementon, N. J., arriving there about 3 p. m. During this trip Falls was in distress. Upon arriving at his home, he entered the house, still holding his stomach and showing evidence of illness. He was unable to eat and went to bed. His condition continued to grow worse; and the next day Dr. Westcott was called, and found him vomiting and suffering with a steady pain in the epigastric region. He was taken to the hospital, and died, on April 25th, of generalized peritonitis resulting from the rupture of a gastric ulcer.

Subject to objection, Sweeney testified that at the time Falls called at his house, which was about twenty minutes after leaving the warehouse of Strawbridge & Clothier, he said: "I just hurt myself, I was lifting a box about twenty minutes ago and I felt something give in my stomach,......" Likewise, subject to objection, Dr. Westcott testified that, on the day following the accident, the deceased had told him that "he had that pain since he lifted a heavy icebox the day before, but it was getting worse at that time."

Appellants' main contention is that there is no competent evidence to support the board's fourth finding of fact, which reads as follows: "4. On or about 1:10 P. M. April 22, 1933, the decedent delivered two refrigerators to the Strawbridge & Clothier Warehouse at 9th and Poplar Streets. He unloaded both on the platform without any assistance. One weighed 129 pounds and the other 180 pounds. The lifting of the

heaviest of these weights from the truck to the platform caused a perforation or rupture of the gastric ulcer as the result of intra-abdominal pressure." Appellants' argument in this connection is that such finding could have been made only on the incompetent hearsay testimony of Sweeney and Dr. Westcott. It is unnecessary for us to decide whether any of this testimony comes within the res gestae rule, as we believe, from an examination of the record, that there is sufficient competent testimony apart therefrom to support the finding of fact.

The compensation authorities may make findings of fact from direct proof, circumstantial evidence, or by inference from other proved facts. Finnerty v. Hudson Coal Co., 113 Pa. Superior Ct. 317, 173 A. 436. In the instant case the deceased unloaded two refrigerators, weighing 129 and 180 pounds, respectively. He did this alone, and no one was present to observe the unloading. He thereafter drove the truck to the home of his brother-in-law, a distance of twenty blocks. This trip consumed the few minutes between the time he unloaded the refrigerators and the time he reached his brother-in-law's. As he arrived, he was observed to be ill, vomiting, and in pain. His condition continued to grow worse, the pain becoming more severe and generalized. He was taken to the hospital, and he died early Tuesday morning; his condition having first appeared on Saturday. A post-mortem examination was made, which disclosed a large perforation at the junction of the pylorus with the duodenum. The pylorus at this point was narrowed; no other ulcers were found. His death resulted from generalized peritonitis caused by a ruptured gastric ulcer. Although deceased was susceptible to such happening, the rupture was not the normal, ordinary, or usual progress of a disease or affliction. Dr. Arthur Keegan testified that, in his professional opinion, the intra-abdominal pressure, resulting from lifting the

heavy object off the truck by the deceased, caused the perforation of the gastric ulcer in this case.

Under all the attending circumstances shown by the testimony, the board's finding was fully warranted without taking into consideration that testimony of Sweeney and Dr. Westcott, to which objection was made on the ground that it was hearsay and did not come within the res gestae rule. See McCauley v. Imperial Woolen Co. et al., 261 Pa. 312, 324, 104 A. 617, 621; Wolford v. Geisel Moving & Storage Co., 262 Pa. 454, 459, 105 A. 831, 832.

We are of the opinion that the record discloses sufficient legally competent evidence to support the board's findings of fact and conclusion that the deceased suffered an accident within the meaning of the Workmen's Compensation Act.

An "accident," under the Act of June 2, 1915, P. L. 736, and its amendments (77 PS §1 et seq.), is recognized as some unexpected or fortuitous event or happening. Lacey v. Washburn & Williams Co., 309 Pa. 574, 164 A. 724; Hamilton v. Pennsylvania R. Co., 298 Pa. 22, 147 A. 837. An injury by accident may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body; and the fact that the employee had an inherent defect or a chronic condition, which rendered him more susceptible to such injury than an ordinary person would have been, will not defeat the right to compensation. "If death comes, during the course of employment, in an ordinary way, natural to the progress of a disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery. (McCauley v. Imperial Co., supra, 327 [261 Pa. 312, 104 A. 617] ; Lane v. Horn & Hardart Co., supra, 333 [261 Pa. 329, 104 A. 615])": Clark v.

Lehigh Valley Coal Co., 264 Pa. 529, at page 533, 107 A. 858, at page 859.

The rupture was not an occurrence in the normal, ordinary, or usual progress of a disease. The breaking of the ulcer was a sudden and abnormal development attributable to a strain or heavy lifting, and was an accidental injury within the meaning of the statute. See Hamilton v. Pennsylvania R. Co., supra, 298 Pa. 22, page 24, 147 A. 837, page 838.

As Dr. Keegan testified, here we have produced, by lifting, an increased intra-abdominal pressure which ruptured the ulcer; and death resulted. Competent testimony supports the conclusion that deceased died from an accidental injury to the physical structure of the body sustained in the course of his employment. See Keck v. John Mullen Construction Co. et al., 113 Pa. Superior Ct. 564, 173 A. 863; Murray v. Brown, 107 Pa. Superior Ct. 516, 164 A. 138.

Judgment of the court below is affirmed.