Mazza v. Kensington Water Company et al., Appellants.

Argued November 15, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*James J. Burns, Jr.,* with him *Gustav M. Berg* and *Paul M. Robinson,* for appellants.

*S. C. Pugliese,* of *Margiotti, Pugliese, Evans & Buckley,* and *Andrew S. Romito,* for appellee, were not heard.

OPINION BY PARKER, J., December 20, 1938:

The claimant was taken ill while working for Kensington Water Company in a wet tunnel. This was followed immediately by lobar pneumonia and in turn by an infection in the blood stream which caused him to lose the sight of both eyes. A referee, affirmed by the

board, awarded claimant compensation for total disability and on appeal to a court of common pleas judgment was entered for the amount of the award. We are in accord with the conclusions of the court below.

The major contention of the appellants is that the claimant failed to produce any evidence showing that claimant suffered an *accident* as that term is used in the Workmen's Compensation Law and in addition, it is argued that the medical testimony did not establish a causal connection between the pneumonia and the alleged accident. There is not any new question of law involved as the Supreme Court and this court in numerous cases have discussed the legal questions arising in this class of cases. In some of the cases it has been held that the facts did not show an accident and in others that they did. The problem here is to determine from an examination of the facts proved which line of cases is applicable.

The Supreme Court in *Jones v. P. & R. C. & I. Co.,* 285 Pa. 317, 320, 132 A. 122, said: "Injury following an extraordinary exposure to wet and cold, suffered in the course of employment, may be compensable under the workmen's compensation statutes, on the same principle as a prostration resulting from heat; so may death from pneumonia caused by an injury or unusual exertion and exposure." It was there held that the proof sustained a finding that there had been an accident as it was likewise held in *Broch v. Lehigh V. C. Co.,* 296 Pa. 502, 146 A. 899; *Boyle v. P. & R. C. & I. Co.,* 99 Pa. Superior Ct. 178; *Senlock v. P. & R. C. & I. Co.,* 104 Pa. Superior Ct. 156, 158 A. 663; *Roth v. Locust Mountain State Hospital,* 130 Pa. Superior Ct. 1, 196 A. 924.

On the other hand compensation was denied in *Gibson v. Kuhn,* 105 Pa. Superior Ct. 264, 161 A. 456; *Micale v. Light,* 105 Pa. Superior Ct. 399, 161 A. 600; *Waleski v. Susq. Col. Co.,* 108 Pa. Superior Ct. 342, 164 A. 355; *Poklembo v. Hazle Brook Coal Co.,* 116 Pa. Superior Ct. 532, 176 A. 850, although in each of these cases pneumonia followed some exposure to inclement

weather or a drenching from water. In the Gibson case President Judge TREXLER, speaking for the court, said: (p. 266) "We cannot take the position that every workman, who has an outside job who happens in the discharge of his duties as employee to get soaked by a rain and contracts pneumonia, dies from an accident." In all of the cases cited where compensation was denied, the exposure to water and dampness was in the usual course of employment without extraordinary circumstances and hence not accidental, while in the cases cited where the injury was held compensable "the wetting which caused the chill and preceded the pneumonia culminating in death [or other injury] was the result of extraordinary exposure to wet and cold, not usually or customarily happening in the course of employment, and therefore accidental": *Poklembo v. Hazle Brook Coal Co.*, supra, p. 534.

The case of *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724, relied on by appellants, did not overrule any of these cases, but it did clarify that portion of the law which deals with the meaning of the word *accident* as used in the workmen's compensation statutes. It was there held (p. 577) that an accident is "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency. ...... If the incident which gives rise to the injurious results complained of can be classed properly as a 'mishap,' or 'fortuitous' happening—an 'untoward event, which is not expected or designed'—it is an accident within the meaning of the Workmen's Compensation Law."

This brings us to a consideration of the proofs and a determination of the question as to whether there was any evidence to support the finding of referee and board that there was an accident. The water company was engaged in laying a new service line and in connection with this work employed a number of their customers, who were delinquent in payment for water consumed, to dig ditches, employing them a sufficient length of

time to pay their water bills and compensating them at the rate of thirty cents per hour. Guglio Mazza, the claimant, was employed during two days in January, 1933 in digging a ditch. This was not his usual type of employment for he had been working in an aluminum works for six years. He had been in good health and lost no time during that employment. On the first day and on the morning of the second day he worked in the ordinary manner in digging a ditch, but at that time an unexpected obstruction was encountered and it was necessary to tunnel around a catch basin. The tunnel was at the bottom of a ditch five feet in depth and was about two and a half feet in width and height. The surface of the ground sloped toward the ditch and the bottom of the ditch sloped toward the tunnel. At noon on the second day it rained and later snowed and rained. The weather was raw and windy but not unseasonably cold. The water ran into the ditch and accumulated in the bottom of the tunnel. The tunnel was driven forward about four feet by the claimant before he was directed by the "boss" to stop working. In performing this work it was necessary for him to work with a bar and shovel and throw the dirt excavated to the surface, working part of the time with his knees in the water and his body against the damp sides and roof of the tunnel. He was wet and muddy when he finished and was so affected that it was necessary for him to be helped out of the ditch and to his home. A doctor was called immediately. He was treated for lobar pneumonia; an infection reached the blood stream and he lost the sight of both eyes. The claimant was not furnished with rubber boots or rain coat while working in the rain and water although it was shown to be the prevailing practice to furnish such equipment when the conditions alleged by the claimant and his witnesses were present. There was also an odor of noxious gas in the hole.

We think these facts bring the proofs clearly within the line of cases where compensation has been allowed.

It was for the referee and board to decide the question of fact and they have decided it in favor of claimant. There was testimony that would support a finding that claimant was not working under ordinary conditions for him and the labor was not performed in the usual manner for one regularly engaged in that class of labor. The fact finding bodies could well conclude that there was an undesigned, sudden and unexpected event, an "untoward event which is [was] not expected or designed," an extraordinary occurrence and a combination of unusual conditions.

The appellants' argument is directly opposed to the previous decisions of the Supreme Court and this court and if it were adopted would mean overruling practically every case in which compensation has been allowed where pneumonia followed an extraordinary exposure. We are all of the opinion that there was evidence sufficient to support the findings of fact in that respect. There is no conflict in the decided cases as will be ascertained if they are carefully read and due allowance is made for the findings of fact which are determined by referee or board and not as a matter of law.

There is no merit in the contention that a causal connection was not shown between the accident and the subsequent loss of sight. Dr. Reutter, his attending physician, gave it as his professional opinion that the exposure caused the pneumonia and that the infection in the blood stream with loss of sight was a natural consequence of the pneumonia. There was additional corroborative testimony from Dr. Franklin. It was a matter peculiarly within the knowledge of an expert. There was not in this case a slow development of disease coming under ordinarily dangerous conditions as there was no impairment of health until the claimant worked in the tunnel under extraordinary conditions and then it came with startling suddenness: *Senlock v. P. & R. C. & I. Co.,* supra (p. 157).

Judgment affirmed.