Vickers *v.* State Work Relief Compensation Fund
et al., Appellants.

Argued April 18, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*S. H. Torchia,* with him *Ralph H. Behney* and *Claude T. Reno,* Attorney General, for appellants.

*Lawrence M. Sebring,* for appellee.

Opinion by Stadtfeld, J., June 25, 1940:

This is an appeal by the State Work Relief Compensation Fund from the decree of the Court of Common Pleas of Beaver County, affirming an award of compensation to the claimant made by the referee and the Workmen's Compensation Board, for alleged disability as the result of an accident within the meaning of the Workmen's Compensation Act.

The claimant, Clyde Vickers, while in the employ of the State Emergency Relief Board on January 2, 1935, felt pain in the regions of his right and left groin while shoveling dirt. On examination it was found that a bilateral hernia had recurred, as a result of which he became totally disabled. He filed a claim petition alleging that the resulting disability was due to an accident and after a hearing, the referee on October 31, 1935 found that claimant did sustain an accident on January 2, 1935, and accordingly awarded compensation. On appeal to the Workmen's Compensation Board, the award as entered by the referee was affirmed on July 9, 1936.

The defendant, the State Work Relief Compensation Fund, then appealed to the Court of Common Pleas of Beaver County and in an opinion dated July 28, 1937, the court concluded as a matter of law, that the finding of the compensation authorities that claimant had sustained an accident was not supported by the testimony of record, reversed the action of the Workmen's Compensation Board, and referred the matter back for further proceedings.

Upon return of the record to the referee, additional testimony was taken and the referee, on May 13, 1938, again made an award in favor of the claimant. Defendant again appealed to the Workmen's Compensation Board and on May 19, 1939, the board affirmed the award of the referee. On appeal to the Court of Com-

mon Pleas of Beaver County, the award of the Work-
men's Compensation Board was affirmed. This appeal
followed.

As stated in the brief on behalf of appellants, the
only question before this court is whether claimant's
disability was the result of an accident as that term is
used in the Workmen's Compensation Act.

Upon the re-reference, the referee made, inter alia,
the following findings of fact: "Fourth: That on Jan-
uary 2, 1935, the claimant, while shoveling hard dirt
from the top of a ditch to the side of the road, felt sud-
den and severe pain in the region of his right and left
groin, and on January 7, 1935, he consulted a physician
who diagnosed his condition as a descent of a pre-exist-
ing bilateral hernial condition which had formerly been
corrected by operative procedure, and recommended that
the present condition be corrected by further operative
procedure. Fifth: Prior to January 2, 1935, the claim-
ant had been performing work of a lighter nature, con-
sisting of carrying water and lanterns and had been en-
gaged at the harder work of shoveling dirt for only a
short while when the bilateral hernia recurred, and your
referee finds as a fact that the shoveling of dirt on Jan-
uary 2, 1935 was too strenuous for the condition of the
claimant or was performed in an unusual way, thereby
causing the unexpected recurrence of the bilateral
hernia, and your referee, specifically, finds that the re-
currence of the bilateral hernia was accidentally sus-
tained. Sixth: That the claimant notified his foreman,
on January 2, 1935, of the sustaining of said accident,
and resultant injury. Seventh: That the claimant was
totally disabled beginning from January 7, 1935, which
total disability still continues. Eighth: That the
bilateral hernial condition resulting in the claimant
being totally disabled as aforesaid is as a direct result
of the injuries sustained by accident while in the course
of his employment with the defendant on January 2,
1935."

Dr. L. H. Landay, called on behalf of the claimant, testified as follows: "Q. And did he give you a history of an accident? A. Well, he told me that he had been working on R. W. D. and he first—well, to go back a little bit, he had been operated on for bilateral hernia by Doctor Martsof, Providence Hospital, Beaver Falls. Q. And when did you see him? A. July 9, 1935—in the Providence Hospital for bilateral hernia on May 5, 1934, at which time he was in the hospital twenty-three days and he had been working on the R. W. D. since November 26, 1934, he was digging ditches and lifting things and he first felt pains again in the groins on January 2, 1935. He saw me a week after that, at which time he had severe pains in the groins like a knife cutting him, and the pains were worse on the right side, but he also had pains on the left side and at the time I saw him he had a recurrence of the hernia on both sides. That's all the notes I have. Q. And did you examine him? A. Yes, I examined him. Q. What did you find on examination? A. A recurrent bilateral hernia. Q. In your opinion, was this caused by the accident he gave you a history of? A. Yes, that was my opinion at that time. Q. Was he totally disabled at that time? A. Yes, he was, of course the—Q. Did you see him any time further for that? A. No, not again. I haven't seen him again. I was away all last year doing post-graduate work. ...... Q. He was totally disabled as a result of the history of an accident he gave you in your opinion? A. Yes, he was totally disabled. Q. What do you recommend? A. Operation again. I sent him down to see Doctor—Q. Has he been operated on again, if you know? A. No, he hasn't. Q. If he hasn't, is he still totally disabled? A. Yes, he is."

The claimant testified as to what happened on January 2, as follows: "A. I was working on a project, Highland Avenue, shoveling dirt back from a ditch, had severe pains in my sides and asked the foreman to allow me to go to the lavatory. When I came back, I told him

it was too much work, if he could give me something easier to do. Q. What kind of work were you doing before you suffered pain? A. I was doing easier work by the foreman who was put on as timekeeper, Eugene Mayas, who was foreman. ...... Q. This thing on January 2nd, did you tell your boss about that? A. I told him I was suffering pain. He just laughed it off. He said: 'You can either shovel or we'll put you back on welfare'. ...... Q. Were you fully recovered from the previous hernia operation when you went back to work on this job? A. I was six months later. Q. Were you told by your doctors you were fully recovered? A. Yes, told me I couldn't do hard work. The first foreman gave me easy work, only started doing hard work after the second foreman was on the job. Christ Bustler told me I ought to be able to use a pick and shovel after having an operation six months before. ...... Q. On January 2nd, you were only working a week when you suffered these pains and doing this hard work for a week, is that right? A. Might have been longer, can't recall just how long it was. Q. Have you worked since? A. No, sir, not a day."

The board, in its opinion, stated: "The facts as we got them from the second hearing show that this claimant had an operation for hernia and about six months later was told by his doctors that he could go back to work but that he could not do hard work; that claimant did go back to work and for some time under one foreman he was permitted to do light work but when another foreman came on the job he was required to do heavy work. He was required to use a shovel to throw dirt back from a ditch and, according to some of the testimony, he threw the dirt back from the ditch that was put up to him by at least three men. The question is whether or not this work that he was doing caused a strain, whereby a recurrence of the hernia occurred. It is the contention of the defendant that there was no

accident. There isn't any question that the claimant suffered a recurrence, was this recurrence the result of an accident in the course of claimant's employment? It seems that the notion of the defendant is that because the claimant was performing his usual work in the usual way he sustained no accident. This notion overlooks the fact that the claimant had not been performing heavy work or much heavy work prior to January 2, 1935, and it also overlooks the legal principle that even though the work being done was the regular work and was being done in the regular way, it is none the less compensable. ......".

In the case of *Vitanza v. Iron City Produce Co. et al.*, 131 Pa. Superior Ct. 441, 200 A. 311, this court said, at pp. 445, 446: "However, an accident may occur to an employee when he is performing his usual work. When such happenings are external they may be readily identified as accidents. In the same manner, an accident or unusual happening may occur within the body. 'An injury by accident may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body; and the fact that the employee had an inherent defect or a chronic condition, which rendered him more susceptible to such injury than an ordinary person would have been, will not defeat the right to compensation': *Falls v. Tenn. Furn. Co.*, 122 Pa. Superior Ct. 550, 556, 186 A. 272. ...... In short, in this line of cases the evidence was not limited to the fact that the employee was performing his accustomed labor and the performing of the usual labor is not the accident to which the injury is attributed. The unusual twist, strain, or sprain was an unusual happening. If while carrying a crate the claimant had turned his ankle, fallen, and broken his arm, the turning of the ankle would have been the unusual event that we denominate an accident. Just so, in the present case the claimant twisted,

strained, or disarranged muscle, tendon, or tissue in such a manner that it caused an internal injury; at least, the board so found as a fact. The only difference in the two situations is that the accident in one case was external and in the other was internal. While we have in some cases referred to the injury to the body as an accident, it is more accurate to say that *from the character of the injury taken with the circumstances we may infer an accident.* This is just what the fact finding body did." (Italics supplied).

We are of the opinion that the record discloses sufficient legally competent evidence to support the board's findings of fact and conclusion that the deceased suffered an accident within the meaning of the Workmen's Compensation Act.

Judgment of the court below is affirmed.