Pastva, Appellant, *v.* Forge Coal Mining Company.

Argued May 8, 1940.

Before CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*George Dluzansky* and *B. A. Sciotto,* for appellant.

*Harry J. Nesbit,* with him *Harold J. Boulton,* for appellee.

OPINION BY CUNNINGHAM, J., October 9, 1940:

This is another workmen's compensation case in which a preexisting physical ailment of a serious and dangerous character is an extremely important element. The immediate cause of the death of claimant's husband, in 1931, was the strangulation of an intra-abdominal hernia.

Decedent had been afflicted for a long time with a preexisting inguinal hernia. The intra-abdominal hernia was formed, according to the medical testimony, when a portion of the bowel slipped into the old sac which had been pushed back through the inguinal ring and had become fastened to the abdominal wall by adhesions.

Pastva was employed as a digger in one of the mines of the defendant company and it became his duty in the course of his employment, two days prior to his death, to "pull" a number of iron spikes, fastening the rails of the mine track to wooden ties, with a "spike bar"—an iron implement about three feet long with a "claw" on one end. After making three attempts to remove a certain spike he desisted and lay down, remarking to his "buddy," "I have the cramps." He was removed from the mine and taken to a hospital where an operation disclosed the condition above mentioned.

Compensation was awarded claimant upon the theory of overexertion by her husband in endeavoring to remove the spike. Upon the appeal of the employer to this court from the judgment entered upon the award, we reversed (119 Pa. Superior Ct. 455, 179 A. 919), but remitted the record for the taking of additional testimony if so desired by the parties. Additional hearings were had by a referee and compensation was again awarded, but upon the employer's appeal to the common

pleas, its exceptions were sustained in an opinion by GREER, J., the award was set aside and judgment, in effect, entered for the defendant coal company. The present appeal is by the claimant from that judgment.

All the circumstances surrounding the attempt of decedent to draw the spike, and a summary of the medical testimony, are set forth in our former opinion. The controlling question in the case is whether claimant met the burden resting upon her of adducing competent evidence which would support a finding that the fatal strangulation of the hernia was caused by an "accident" in the course of her husband's employment, within the meaning of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §411, and was not a natural and to be expected development of his physical ailment.

In our former opinion we said it was difficult to see, under all the evidence then of record, anything more than that Pastva had for a number of years an internal abdominal hernia which might at any time become strangulated from any one of many different causes— one expert said a man could have such a strangulation lying in bed—and that while engaged in his usual work the strangulation occurred.

Further, that there was no evidence that decedent was doing anything unusual or out of the ordinary course of his work at the time the chronic condition of the hernia became acute; nor was there any evidence from which it could reasonably be found that the strangulation resulted from the application by the decedent of such abrupt violence, force, effort or strain to the physical structure of his body as is necessary to support an inference of "accidental" injury. See *Hoffman v. Rhoads Const. Co.*, 113 Pa. Superior Ct. 55, 172 A. 33.

As claimant had appeared before the referee without counsel, we returned the record to afford her an opportunity to supply, if she could, the above defects in her proofs.

A number of additional hearings were had, but, as we read the testimony taken thereat, the indicated defects in claimant's case were not cured.

The principal testimony at the first three hearings was that of engineers who had conducted laboratory tests to ascertain the pressure in pounds at which spikes similar to those used in the mine track would stretch and at which the heads would shear off, as well as the pressure a workman would have to apply to the handle end of a spike bar to produce these results. Its admission was objected to upon the ground that it was purely hypothetical and was not based upon the actual conditions in this case. As there was no evidence that the spike decedent was trying to pull was stretched or that its head had sheared off, the opinions of these experts were of little, if any, value upon the issue of alleged overexertion. Moreover, the evidence at one of the original hearings contains a full and practical answer to these theories of stretching, or shearing the head off, the spike. Decedent's "buddy," who died before the second series of hearings had begun, testified at one of the early hearings that after decedent declared he had a cramp and desisted from his attempt to remove the spike he, the "buddy," pulled it. An excerpt from his testimony reads: "Q. Did the prong or the fork of the bar get hold of the spike, or don't you know that? A. Yes, he had a hold on it. Q. But didn't budge it? A. No, sir. Q. Was it hard for you to remove? A. Yes, sir, it was."

In addition to the fact that the idea of some difficulty in pulling the spike was suggested by the last question and merely assented to by the witness, the term "hard" is a relative one and gives no more definite information with respect to the amount of force actually exerted by the witness than do the words "fast" or "slow" when used to describe speed.

Dr. C. F. Zobel, who never saw deceased, and, of

course, had no personal knowledge of the conditions disclosed by the operation, undertook to express an opinion, based on a history of the case alone, that it would require "extraordinary and unusual pressure" to cause the strangulation of decedent's hernia. His testimony added nothing, however, to the previous medical evidence.

Frank Warner and John Sendig testified they had laid the track in question, some three months prior to the occurrence; that the spikes used were a little heavier, with slightly flatter heads, than those offered in evidence and tested by the engineers, and that the ties were mostly of oak. They had no knowledge of the actual circumstances of Pastva's collapse.

Additional testimony related to the usual method of taking up track in a mine; the difficulties involved, depending upon the kind of wood in the ties, whether the spikes were rusty or the wood wet; and the proportionate number of spikes usually found difficult to draw. As expressed by one witness, an experienced miner, it is "all in a day's work" for a miner to remove spikes and trackage.

It seems to us that the additional testimony, instead of helping claimant, tended to establish that in performing the work her husband had been engaged in for a long time it was quite the usual and ordinary thing for him to find spikes the drawing of which was difficult, but a part of the work to which he was accustomed. There is no evidence, in addition to that in the record on the former appeal, showing that Pastva did, as a matter of actual observed fact, exert any unusual pressure on the spike bar or do anything out of the line of his usual work in attempting to remove the spike from the tie. The testimony of his "buddy," quoted in our former opinion at page 457, that Pastva "pushed down real heavy" at the time of his third attempt is not sufficient, under our decisions, to establish "overexertion" as a ground for an award of compensation.

We have had occasion to consider when "overexertion" amounts to an "accident" in several opinions written since our first disposition of the present case. Among these are *Adams v. W. J. Rainey, Inc.*, 133 Pa. Superior Ct. 538, 3 A. 2d 270; *Miller v. Lycoming Mfg. Co.*, 135 Pa. Superior Ct. 558, 7 A. 2d 22; and *Minner v. Reno*, 138 Pa. Superior Ct. 37, 9 A. 2d 909; and *Dolinar v. Pittsburgh Terminal Coal Corp.*, 140 Pa. Superior Ct. 543, 14 A. 2d 871. In the Miller case, claimant suffered a detached retina while breaking pig iron with a sledge, his usual work. In holding that no accident had been shown, and after quoting from earlier decisions, we said (page 565) : "Our conclusion is that where an employee while in the course of his employment, is performing hard labor, but of the same kind and in the same manner as he had been doing it for several years, ...... the performance of such hard labor is not of itself overexertion as that word is used in our cases, and is not an accident as that term is used in the Workmen's Compensation Law ...... Overexertion must be given a more limited meaning and must, in any event, be confined to such cases as furnish the basis for a conclusion that there has been 'an unforeseen or fortuitous event.' " There is nothing unforeseen or unexpected about a spike in a mine haulage track being hard to pull.

The fact that Pastva had, for a long time, an intra-abdominal hernia, and was in constant danger of the results of its strangulation, distinguishes this case from *Pollock v. Clairton School District*, 100 Pa. Superior Ct. 333, *Fye v. B. & O. R. R. Co.*, 133 Pa. Superior Ct. 550, 3 A. 2d 275; *Camilli v. Penna. R. R. Co.*, 135 Pa. Superior Ct. 510, 7 A. 2d 129; and *Palermo v. North East Preserving Works, Inc.*, 141 Pa. Superior Ct. 211, 15 A. 2d 44, in all of which cases the claimant, while free from any ailment, suffered a hernia. In the Fye case the employee's death was due to strangulation and perforation of the bowel. Affirming a judgment for

claimant on the ground that an accident could be inferred from the circumstances surrounding the injury, we stated (page 557) : "But [this] is a case where an employee, performing hard work of the same kind and in the same manner he had been doing it for years, sustained an unusual and not to be expected injury to internal organs of his body which were not affected by any preexisting disease—an injury which was not the natural or probable result of what he was doing.

"In our opinion, this is the line of demarcation as to compensability in cases in which no external mishap is shown. Each case must be decided upon its own facts. Where disability or death has been merely hastened by the effect of even hard labor, performed in the usual way, upon an organ or organs impaired by a disease—other than an occupational one—the employer is not required to pay compensation ......

"On the other hand, if the disabling or fatal injury is to an organ in a normal and healthy condition, or if the organ, although not sound, has been affected by the injury in a way not attributable to the natural progress of a disease (*Keck v. John Mullen Const. Co. et al.*, 133 Pa. Superior Ct. 564, 173 A. 863; *Betts v. Amer. Stores Co.*, 105 Pa. Superior Ct. 452, 161 A. 589), the happening of an 'accident,' within the meaning of the statute, may be inferred from the surrounding circumstances: *Witt v. Witt's Food Market et al.*, 122 Pa. Superior Ct. 557, 186 A. 275, and cases there cited." See also *Vitanza v. Iron City Produce Co. et al.*, 131 Pa. Superior Ct. 441, 200 A. 311.

Our conclusion is that claimant has not adduced any competent evidence which would support a finding that she has met the burden legally imposed upon her of showing that her husband's death resulted from an "accident" sustained in the course of his employment. On the contrary, we think this case, under all the evidence, falls squarely within the first classification of cases set

forth in the recent opinion of this court in *Crispin v. Leedom and Worrall Company*, 142 Pa. Superior Ct. 1, 15 A. 2d 549. None of the assignments of error can be sustained.

Judgment affirmed.