Orlandini *v.* Volpe Coal Company, Appellant.

Argued March 6, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Charles J. Bufalino,* for appellant.

*Carl J. Burke,* for appellee.

OPINION BY CUNNINGHAM, J., June 30, 1941:

Claimant in this workmen's compensation case sought compensation for total disability and medical and hospital expenses, resulting from a right femoral hernia allegedly suffered July 11, 1938, while in the employ of the defendant company as a miner.

The referee made, and the board and court below sustained, an award of compensation for the period beginning July 12, and ending December 7, 1938, together with the cost of the medical and hospital expense incurred by claimant. The appeal to this court is by the employer.

Appellant's first two propositions require a careful review of the evidence and may be thus stated: (1) There is no evidence to support the referee's finding of an accidental injury, and (2) appellant is not liable to pay claimant's medical and hospital expenses which were privately incurred by him after he had rejected the services tendered by appellant.

Regarding the occurrence of an accident, the referee made the following finding: "3. From the testimony we must find that claimant suffered total disability from July 12, 1938, until December 8, 1938, and that such total disability was due to a femoral hernia resulting from a *strain* caused by the moving of rock on July 11, 1938, and to the surgical operation performed for the correction of the said femoral hernia." (Italics supplied.)

Claimant testified he was moving a rock weighing approximately 150 pounds about 8:45 A.M. the morning of July 11, 1938, when he "happened to lift pretty

heavy and ...... felt a sudden pain and ......
couldn't work." Immediately after lifting the rock he
felt a sharp pain on his right side. Claimant gave a
more detailed description when he stated on cross-ex-
amination: "When I got a certain piece of rock it was
so I couldn't lift any more, it hurt, and a big stitch
I had, awful stitch in the right side and I dropped it
and I told the [laborer] 'I think I am hurt.'" His
helpers having urged him to stay in order to get in a
full day's work, claimant spent the remainder of the day
putting "topping" (pieces of coal) around the top of
the loaded cars.

On returning home that evening and while taking a
bath he noticed a lump near his right groin about the
size of a chestnut. The next day, July 12, he reported
the injury to assistant foreman Bradley who gave him
a note referring him to Dr. Mauriello, the company
physician.

Claimant was examined by Dr. Mauriello at the
company offices that evening. Dr. Mauriello found
soreness and tenderness in the lower right quadrant
of the abdomen, small swollen glands, and a "small
femoral hernia about the size of a hazel nut." He told
claimant his trouble was constipation with "a possi-
bility of subacute appendicitis"; that there was no
liability upon the part of the company as it was not a
compensation but a medical case, and that claimant
would therefore have to pay for any further medical
treatment out of his own pocket. At the time of the
examination Dr. Mauriello informed claimant that if
he reported to the doctor's Wilkes-Barre office the next
evening, he "would be glad to treat him as a medical
case at [claimant's] own expense." Dr. Mauriello pre-
scribed pills and mineral oil for constipation and con-
tinued to treat claimant by physiotherapy at his Wilkes-
Barre office during July.

On discovering that claimant did not have confidence
in his treatment, Dr. Mauriello advised him to consult

his own family physician, Dr. Pearlman, which claimant did on July 30th. Upon the history given him by claimant of a sharp sudden pain in his right groin while lifting a rock the morning of July 11th, Dr. Pearlman made a diagnosis of a right femoral hernia. Dr. Pearlman advised an operation and referred claimant on August 1st to Dr. Pugliese, a surgeon, who operated on September 8th, found and repaired a femoral hernia. Claimant was discharged from the hospital September 20th. Dr. Pearlman's bill was $52, Dr. Pugliese's $75 and the hospital charge $48, all of which items were allowed claimant by the referee, board and court below as medical and hospital expenses.

Meanwhile, on August 17th and 18th, Dr. Mauriello called in Doctors Arndt and Hanlon for consultation on claimant's case. Following this consultation the company, through Dr. Mauriello, decided to offer claimant a surgical operation at its expense. Dr. Mauriello, on cross-examination, stated the reasons for this change of attitude upon the part of appellant, as follows: "In consultation with Dr. Arndt and Dr. Hanlon I found out he was going to Dr. Pearlman and Dr. Pugliese and that Dr. Pugliese was going to operate on him, I felt that we ought to take him under our care and keep him under our care and for peace and good will." Accordingly, Dr. Mauriello arranged to have claimant come to the Mercy Hospital for operation by Dr. Hanlon about a week before Dr. Pugliese operated. Claimant, however, did not present himself for this operation, but was operated on later by Dr. Pugliese.

The circumstances surrounding and attending the injury, and its nature as disclosed by the operation, were sufficient to justify the finding of an accidental cause: *Palermo v. North East Preserving Works, Inc.,* 141 Pa. Superior Ct. 211, 214, 15 A. 2d 44; *Camilli v. Penna. R. R. Co.,* 135 Pa. Superior Ct. 510, 513, 7 A. 2d 129; *Vitanza v. Iron City Produce Co. et al.,* 131 Pa. Superior Ct. 441, 200 A. 311. Holding in the Camilli case

that an accidental cause had been shown where claimant suffered a left inguinal hernia immediately after lifting a twenty-five pound piece of ice to a height three feet above his head, HIRT, J., stated (page 513): "Moreover, the testimony supports the conclusion that the hernia resulted from 'violence to the physical structure of the body—a phrase which includes not only the application of external force but also injury to the physical structure from an unusual strain': *Berner v. P. & R. C. & I. Co.,* 100 Pa. Superior Ct. 324. Where the injury is wholly within the body, proof of the accidental cause often must rest upon circumstances attending it: *Betts v. American Stores Co.,* 105 Pa. Superior Ct. 452, 161 A. 589; *Roland v. Frantz,* 134 Pa. Superior Ct. 24, 3 A. 2d 279. Particularly is this true of a hernia, an injury which often results from lifting a weight not in itself excessive, but done in such a manner as to produce undue strain. The posture of the individual while lifting, and not the weight, may determine the result. An injury so caused may be regarded as an unexpected or fortuitous event or happening. 'It is not the lifting that constitutes the accident, but the strain or sprain resulting therefrom ...... An injury by accident may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body': *Witt v. Witt's Food Mkt.,* 122 Pa. Superior Ct. 557, 186 A. 275."

Here claimant in pushing or lifting a large rock suffered severe and sudden pain, complained to his fellow employees, and promptly reported the occurrence to the assistant foreman. After the injury he did only light work and noticed a lump in his right groin the same evening. Dr. Mauriello, who examined claimant the next evening found evidence of a right femoral hernia, although he purposely did not inform claimant of this fact.

The hernia was of recent origin; claimant at the time

was an apparently healthy person, not afflicted with any preexisting disease, hernia, or congenital weakness. In this respect the distinction made in *Fye v. Baltimore & Ohio Railroad,* 133 Pa. Superior Ct. 550, 557, 3 A. 2d 275, is important, and for the same reason the cases of *Pastva v. Forge Coal Mining Co.,* 119 Pa. Superior Ct. 455, 179 A. 919; Ibid., 142 Pa. Superior Ct. 42, 15 A. 2d 682, relied upon by appellant, are not controlling.

Here, also, as in *Palermo v. North East Preserving Works,* supra, at the time of the injury, July 11, 1938, "there were no statutory requirements relating specifically to the essential proofs in hernia cases. The provisions of paragraph (g) of section 306 of the Workmen's Compensation Act of 1915, added by the amendment of April 13, 1927, P. L. 186, Sec. 1, [77 PS § 652] were omitted from the [reenacting and amendatory] Act of June 4, 1937, P. L. 1552, which became effective January 1, 1938."

The medical testimony was sufficiently definite and positive, under the rule laid down in *Elonis v. Lytle Coal Co.,* 134 Pa. Superior Ct. 264, 3 A. 2d 995, to support the finding that the hernia was caused by the occurrences of July 11, 1938. Dr. Pearlman and Dr. Pugliese both testified that in their professional opinion the severe straining effort of that date caused the hernia.

Section 306 (e) of the Act of 1915, as amended and in force under the Act of June 4, 1937, supra, 77 PS §531, requires the employer to furnish reasonable surgical ...... medical and hospital treatment to an injured employee during the first three months after the date of the injury "unless the employe refuses to allow them to be furnished by the employer." The cost of such services is limited to $200. If the employer refuses to furnish such services upon application, the employee may procure the same elsewhere, the employer being liable for the reasonable cost thereof.

In view of this employer's conduct as disclosed by the

testimony of its own physician, Dr. Mauriello, we have no hesitancy in affirming the award of hospital and medical expenses to claimant, the amount thereof being well within the statutory limitation. Dr. Mauriello's denial, in behalf of appellant, of liability, coupled with his statement that claimant would himself have to pay for any medical treatment, beyond the first examination, estops appellant from asserting that it offered medical treatment which was refused by claimant. Furthermore, it was Dr. Mauriello who referred claimant to his own family physician, Dr. Pearlman.

Finally, appellant contends that the Act of June 4, 1937, supra, does not apply here since it intervened in the case of *Rich Hill Coal Co. et al. v. Bashore,* 334 Pa. 449, 7 A. 2d 302, in which an injunction restraining enforcement of that act was issued by the Common Pleas of Dauphin County. Appellant does not here specifically raise the question of the constitutionality of the 1937 Act (page 51 of Appellant's Brief) but asserts that the new schedules prescribed thereunder should be held in abeyance and not applied while the Rich Hill case is pending in the Dauphin County Courts.

The judgment in favor of the claimant, as entered by the court below and now appealed from, is "for compen-sation at the rate of $18 per week for the period beginning July 12, 1938, and ending December 7, 1938, inclusive, with interest on each deferred installment of compensation from the due date thereof, and also the sum of $52 for the services of Dr. William Pearlman of Wilkes-Barre, Pa., the sum of $75 for the services of Dr. Frank Pugliese of Wilkes-Barre, Pa., and the sum of $48 to the Mercy Hospital of Wilkes-Barre, Pa."

The judgment will be affirmed, but, for the reasons stated in *Guzzy et al. v. Volpe Coal Company,* 144 Pa. Superior Ct. 347, 19 A. 2d 547, subject to the provision that no execution thereon shall issue for any sum or amount in excess of the rate fixed for total disability

by the schedule in force prior to the effective date of the Act of June 4, 1937, P. L. 1552, $15 per week, without the permission or authority of this Court, and until a reasonable time has elapsed to secure a final determination of the issue pending before the Dauphin County Court as to the reasonableness and constitutionality of the rate of compensation fixed in said Act of 1937, as respects total disability; and if found unconstitutional as respects the rate of compensation here involved, the judgment to be opened as to all in excess of the compensation payable under the prior statute. If the claimant refuses to accept such compensation as directed above, interest shall cease on the amounts so tendered.

Judgment affirmed as modified.